Note.—See under (1) 38 Cyc. p. 1547; 26 R. C. L. p. 1062 et seq. (2) 38 Cyc. p. 1615; 14 R. C. L. p. 784; 3 R. C. L. Supp. pp. 284-286; 4 R. C. L. Supp. p. 919.

## STATE ex rel. SWIRCZYNSKI v. KEY et al.

No. 17451—Opinion Filed June 22, 1926.

(Syllabus.)

**1. Statutes — Subjects of Legislation at Special Session Confined to Recommendations of Governor.**

By section 7, art. 6, of the Constitution, the Governor is given power to convoke a special or extraordinary session of the Legislature, and contains the following provision, to wit:

"At extraordinary sessions, no subject shall be acted upon, except such as the Governor may recommend for consideration."

This language is mandatory and must be complied with in order to give an extraordinary session power to legislate upon a subject.

**2. Same—Constitutional Requirement Construed.**

Said section 7 does not prescribe the manner or form in which the Governor may recommend a measure to the Legislature for consideration, nor does it prescribe the time at which the Governor's message must be delivered, nor the precise words to be used, nor does it require that such message be addressed to a joint session of both Houses, nor that such measure must be recommended for favorable consideration, nor that the necessity for legislation must originate in the mind of the Governor.

**3. Same — Constitutional Provision as to Governor Communicating Matters to Special Session.**

Section 9, of said article contains the following provision, to wit:

"He shall communicate, from time to time, such matters as he may elect or the Legislature may require."

The above provision does not confine the Governor to any particular time for communication to the Legislature, but gives him express authority to communicate, from time to time, such matters as he may elect or the Legislature may require, and clearly provides that if the Legislature itself should deem it necessary to legislate upon a subject, it may call such matter to the Gov-

ernor's attention and require of him a communication authorizing the Legislature to act upon the subject, and the Constitution provides:

"He shall communicate * * * such matters as * * * the Legislature may require."

## 4. Same—Form of Communication—Enactments in Substantial Compliance with Constitution.

In the absence of prescribed forms of the Constitution for communications from the Governor to the Legislature, the courts are not at liberty to prescribe a particular form and strike down a statute because such form is not followed, and where the requirements of the Constitution have been substantially complied with, in the enactment of a statute, the courts will not declare such statute void.

Error from District Court, Oklahoma County; William H. Zwick, Judge.

Mandamus by the State, on the relation of Paul P. Swirczynski, against Geo. D. Key et al., composing the County Election Board of Oklahoma County. Judgment for defendants, and plaintiff brings error. Affirmed.

Chas. H. Garnett, for plaintiff in error.

J. K. Wright, Co. Atty., D. S. Levy, and Stuart, Sharp & Cruce, for defendants in error.

HARRISON, J. This was a proceeding by plaintiff in error for a writ of mandamus to compel the county election board of Oklahoma county to receive plaintiff in error's application to file as a candidate for the Democratic nomination for sheriff of said county, and to place his name upon the ticket to be voted upon at the forthcoming primary election, and involves the validity of chapter 121, Acts of the Legislature, Special Session 1924, generally known as the "Four Year Term Act," because it fixes the terms of certain county officers at four years.

Plaintiff in error presented his application to the county election board for permission to file as a candidate for nomination, and to have his name printed upon the ticket to be voted upon at the forthcoming primary. The election board refused to permit such filing, for the reason that, under the provisions of said chapter 121. no ticket will be printed for the nomination of a candidate for sheriff for this year, 1926, nor any election held for such purpose, and thereupon plaintiff in error applied to the district court for a writ of mandamus, contending that said chapter 121 is unconstitutional and void, and asking for a writ to compel said board to receive his application.

Upon final hearing, the trial judge denied the peremptory writ and ordered the proceeding dismissed, thereby sustaining the validity of the statute, and plaintiff below has appealed to this court for a reversal of such judgment, contending that such judgment is erroneous because said statute is unconstitutional and void for the reason that the subject of the measure legislated upon in said chapter 121 was not recommended by the Governor to the special session of the Legislature, as required by section 7, art. 6, of the Constitution, nor as required by section 9 of said article, but was passed during said special session in violation of both of said sections.

Section 7, supra, is as follows:

"The Governor shall have power to convoke the Legislature, or the Senate only, on extraordinary occasions. At extraordinary sessions, no subject shall be acted upon, except such as the Governor may recommend for consideration."

Section 9 is as follows:

"At every session of the Legislature, and immediately upon its organization, the Governor shall communicate by message, delivered to a joint session of the two Houses, upon the condition of the state; and shall recommend such matters to the Legislature as he shall judge expedient. He shall also transmit a copy, to each House, of the full report of each state officer and state commission. He shall communicate, from time to time, such matters as he may elect or the Legislature may require."

The subject legislated upon was submitted by the Governor in a message which contains the following:

"To the Ninth Legislature of the State of Oklahoma in Special Session Assembled:

"At the request of certain members of your honorable body, I am submitting for your consideration, the following additional legislative subjects, to wit: * * *

"2. Fixing the terms of office of the various county officials in the several counties of the state. * * *"

The title of the act in question is:

"An Act amending section 5735 of chapter 35, article 6, Compiled Oklahoma Statutes, Annotated, 1921, fixing and lengthening the terms of office of the county attorney, court clerk, county clerk, county surveyor, superintendent of public instruction, county sheriff, county treasurer, county public weigher, county assessor, and three county commissioners, in every county in the state of Oklahoma, providing that such officers shall be elected at the general

election to be held in November, 1924, and thereafter as outlined in paragraphs A, B, and C. in the body of the bill as given below, and declaring an emergency."

The act itself provides that at the general election, November, 1924, and each four years thereafter, there shall be elected a county attorney, court clerk, county sheriff, county treasurer, and county superintendent, all of whom shall hold office for a term of four years, each of whose terms, except the county superintendent and county treasurer, to begin on the first Monday in January, following their election, the term of the county superintendent and county treasurer to begin on the first Monday in July, following their election.

The specific objections urged by plaintiff in error are that the above message of the Governor was not addressed to a joint session of both Houses; that it was not sent to the Legislature immediately upon its organization; that it did not recommend such subject for favorable consideration or passage: that it was delivered after the Legislature had been in session for two weeks; that it shows on its face that the idea of necessity for legislation upon the subject did not originate in the mind of the Governor, but originated with the Legislature itself; that it was not sufficiently definite and certain nor broad enough to give the special session authority to pass the act in question; that it did not recommend favorable consideration and legislation upon such measure; that it used the words "I am submitting for your consideration," instead of using the exact words in section 7 of the Constitution, "recommend for consideration."

As to the first two contentions, viz.: That the message was not delivered to a joint session and not sent immediately upon the Legislature's organization, we find no basis for such contention in the provisions of either of the above sections of the Constitution.

Section 7, supra, has reference exclusively to extraordinary sessions, and does not say when the Governor's message shall be delivered, nor to whom it shall be addressed; it merely says:

"No subject shall be acted upon, except such as the Governor may recommend for consideration."

Section 9 provides that:

"At every session of the Legislature and immediately upon its organization, the Governor shall communicate by message delivered to a joint session of the two Houses upon the condition of the state."

It does not say that immediately upon its organization a message of any other character shall be delivered to the joint session of the two Houses, except the message upon the condition of the state.

The next clause, which of itself is a complete sentence, says, "shall recommend such matters to the Legislature as he shall judge expedient." This does not require such matters as he may judge expedient to be addressed to a joint session of the two Houses; it merely requires that such matters be recommended to the Legislature. This is exactly what the Governor did. His message, as will be seen, is addressed

"To the Ninth Legislature of the State of Oklahoma in Special Session Assembled."

This, we think, is a full compliance with the requirements of the Constitution.

The above quoted provision of section 9 does not require that such matters as the Governor may judge expedient shall be addressed to a joint session, but says, "shall be recommended to the Legislature."

The next sentence, to wit:

"He shall also transmit a copy to each House of the full report of each state officer and state commission."

This sentence, this provision, does not require that the message be transmitted to a joint session, but that a copy shall be transmitted to each House.

The natural presumption would be that the message in this case being addressed, as it was, "To the Ninth Legislature of the State of Oklahoma, in Special Session Assembled," not to either House in particular, but to the Legislature itself, the reasonable presumption, in the absence of any evidence or contention to the contrary, would be that a copy was transmitted to each House. Furthermore, the last sentence in said section 9, as may be seen, is:

"He shall communicate, from time to time, such matters as he may elect or the Legislature may require."

This independent sentence in section 9 answers the contention that all messages must be sent immediately after its organization, and the contention that all subjects for legislation must originate with the Governor. The language of the last sentence in said section 9 is plain; it says "he shall communicate, from time to time," not only such matters as he may elect, but also such matters as the Legislature may require.

The provision gives the Governor express authority to communicate from time to time, and is not confined to the time immediate-

ly upon the organization of the Legislature, but from time to time during the session he may communicate such matters as may occur to his mind, and shall also communicate such matters as the Legislature may require. It might occur to the Governor that certain matters should be considered by the Legislature; in such case he is authorized to communicate his ideas to the Legislature. On the other hand, it might occur to the Legislature itself that certain subjects should be legislated upon; in such case, when required by the Legislature, the Constitution says plainly, "He shall communicate * * * such matters as the Legislature may require." The message herein says on its face that the subject herein was submitted in answer to the requirements of the Legislature; it is addressed to the Legislature as a whole, and says, "At the request of certain members of your honorable body," that is, to the Legislature as a whole, "I am submitting for your consideration the following additional legislative subjects"; then enumerating the subjects thereby submitted.

Thus the Constitution itself answers the contentions that the message was not addressed to a joint session; that it was not sent immediately upon its organization; that it was delivered after the Legislature had been in session; and that it shows on its face that the idea did not originate with the Governor. Hence, these contentions cannot be sustained.

Likewise the contention that the message does not recommend for favorable consideration is without merit, for the Constitution does not say, "recommend for favorable consideration"; it says merely:

"At extraordinary sessions, no subject shall be acted upon, except such as the Governor may recommend for consideration." Section 7.

It does not say that the Governor must recommend for favorable consideration, in order to give the Legislature authority to act, nor does it imply that the Governor must urge favorable consideration in order to give the Legislature authority to act. When the Governor, by official message, by official communication, recommends a subject for consideration, for attention, for thought, for examination, for deliberation upon, the message is sufficient under the Constitution to give the Legislature authority to legislate upon the subject thus submitted.

The contention that the message was not sufficiently definite, nor broad enough to give the special session authority to pass the act in question, is too lacking in merit to warrant this court in striking down an act of the Legislature.

The message, among other subjects named, also names the subject of fixing the terms of various county officials, and officials are necessarily county officers, in the several counties of the state. The subject appears to have been discussed back and forth, between the Legislature and the Governor, to the extent that the Legislature knew what it was asking of the Governor and the Governor knew what the Legislature desired, and under the universal rule that every reasonable presumption will be indulged in favor of the validity of a statute, we cannot feel justified in striking down this statute because the Governor's message was not as broad as plaintiff seems to think it should have been.

As to the repeated contention that the message does not recommend favorable consideration, and therefore the statute should be stricken, it may be said that the Governor has no power to force the Legislature to pass any measure. To attempt to do so would constitute an unauthorized interference with legislative powers in violation of article 4 of the Constitution, which distributes the powers of state government to three separate and distinct departments, and expressly says, "Neither shall exercise the powers properly belonging to either of the others."

In view of the above provision on distribution of powers, and in view of the language of sections 7 and 9, supra, we cannot say that the Governor must recommend favorable consideration of a measure submitted to the Legislature in order to give it authority to legislate, and certainly we do not feel justified in striking down the statute in question merely because the Governor did not insist upon the passage of the act.

That the Governor must recommend a measure for consideration, in order to give a special session of the Legislature authority to act, cannot be denied, because the Constitution says:

"No subject shall be acted upon, except such as the Governor may recommend for consideration" (Section 7).

—but it does not say that he must recommend it for favorable consideration and insist upon its passage, in order to give the Legislature authority to pass it.

Contention is also made that the statute should be declared void because the Governor in his message used the words, "I am submitting for your consideration," in-

stead of the exact words of the Constitution, "I recommend for consideration."

We do not feel authorized and could not feel justified in striking down, not only the statute in question, but possibly a number of other acts upon subjects which were submitted with the same message, because of the difference in meaning between the words "submitting for your consideration" and "recommend for consideration." To sustain the contention of plaintiff in error would be to strike down this statute, as well as several other statutes, because of the difference in meaning of the two words, "submitting" for your consideration, and "recommend" for consideration. The thoroughly established, sound, and universal rule of indulgence in favor of the validity of a statute would not permit us to sustain such contention.

The authorities cited by plaintiff in error, to wit, 26 R. C. L. 804, Wells v. Mo. Pac. (Mo.) 19 S. W. 530, 40 L. R. A. (N. S.) 27, and Manor Casino v. State (Tex. Civ. App.) 34 S. W. 769, are not applicable nor controlling in any issue involved in this case. They merely sustain the contention that most states have constitutional provisions which restrict the authority of special or called sessions of state Legislatures to legislation only upon such subjects as may be recommended, submitted, presented, or communicated to the Legislature by the Governor, and that such restrictions are held to be mandatory. But this question is not in issue in this case; no one denies that such restrictions are mandatory, and no one denies that under our Constitution a special or called session is expressly restricted to such subjects as may be recommended for consideration by the Governor. A special session, extraordinary session, as our Constitution denominates it, has no authority to legislate upon any subject unless such subject has been, by an official message from the Governor, communicated to it for consideration.

But the Constitution does not require that the Governor shall insist upon the passage of a measure in order to give the Legislature authority to consider a subject, nor does it prescribe the form of communication or message, nor the manner in which it may be communicated, nor to whom it must be addressed.

In the absence of prescribed forms by the Constitution, the court is not at liberty to prescribe a form, and strike down a statute because such form is not followed. It has no such power, and where the requirements of the Constitution have been substantially complied with, in the enactment of a statute, the courts will not declare such statute void.

No decision has been cited from this state upon the identical questions presented here, and we know of none upon such questions; neither has there been any decision from any other state upon the same questions, nor upon the peculiar provisions which our Constitution contains. But the clear language of our Constitution, when analyzed and given all the force which such language implies, disposes of every question presented adversely to the contention of plaintiff in error.

For the reasons herein given, the judgment of the lower court sustaining the validity of the statute in question and denying the writ of mandamus is affirmed.

All the Justices concur, except BRANSON, V. C. J., dissenting.

BRANSON, V. C. J. (dissenting). The exact question presented herein is before this court for the first time. The writer reluctantly dissents from the opinion of the majority. He feels impelled to state his views of the intent of the constitutional provisions drawn in question.

Section 7, article 6, of the Constitution gives the Governor the power to convoke the Legislature, or the Senate, only **"on extraordinary occasions."** The language thereof clearly indicates that there must be an exigency to meet which legislation is required, and to await the regular biennial session would occasion great public detriment to the state or some division thereof. Its legislative action, when so convened, is limited by said section in this language: "At extraordinary sessions no subject shall be acted upon except such as the Governor may recommend for consideration."

The entire language clearly imports that the legislation shall be confined to those matters creating the **extraordinary occasion** which authorizes the Governor to call the Legislature into extra session; and such as the Governor recommends. The word "recommend" in said section means, "advises, or commends for favorable consideration," and necessarily, the message of the Governor **advising or commending for favorable consideration** any legislative enactments must set forth the character and purpose of the proposed legislation occasioning the exigency which warrants an extraordinary session, so as to disclose what the Chief Magistrate believes the good of the commonwealth demands at the hands of such extra session.

When the recommendation is made by the

Governor, the Legislature of course is not impelled to enact into law what the Governor thinks the condition of the state requires, for the perfectly apparent and generally known reason that the Legislature is sovereign, within constitutional limitations. But, if the Legislature does adopt and put into legal enactments what the Governor has recommended in substance, such legislation is as effective as law as if passed at a regular biennial session. But the recommendation of the Governor must be sufficiently broad and definite that, when the act of the Legislature takes the form of law, if in fact it does, an examination of the recommendation of the Governor and the act of the Legislature thereon, it discloses that the action of the Legislature was within the intendment of the recommendation made by the Chief Executive: otherwise bills passed at such extraordinary session do not rise to the dignity of law. The writer believes that all the authorities, when properly considered, bear this out.

If this conclusion is correct, we must look to the message of the Governor to the extraordinary session claimed to recommend legislation on the subject here involved. Said message bears date of January 29, 1924. We do not comment upon that part thereof urged to the effect that the recommendations must be made to a joint session of both Houses. The particular message in question seems to have been addressed to the respective Houses not in joint session. It begins:

"At the request of certain members of your honorable body, I am submitting for your consideration the following additional legislative subjects, to wit: * * * 2. Fixing the terms of office of the various county officials in the several counties of the state."

This is all the Governor said to the Legislature in regard to the matter here in question. Did such language recommend anything? The writer thinks not. In the first place, if the language employed should be considered as a recommendation for legislation on the subject of the terms of county officials, it in no wise indicates the purpose or scope of such legislation. There is no reason apparent to the writer and no authorities cited as persuasive why this court should read anything into a message sent by the Governor to the Legislature convened in extraordinary session. The court has a right to presume that the Governor selected his language and intended nothing broader than the language imports. The Governor may have designedly so intended it. The language is, **"Fixing the terms of office of the various county officials** in the several counties of the state." A "county official" is an individual; "county office" is a public office created by law. The term of such offices is fixed by law and was so fixed at the time. Legislation as to county offices is one thing, but the terms of office of county officials is a vastly different thing. The term "official" has a fixed and definite meaning, and refers to some person actually in office, either by appointment or election. At the time this message was written, the various county offices in the state were filled or occupied by certain individuals called "officials," and the language of the message indicates that the Legislature might legislate as to the terms or the duration of time that the persons so holding the offices (officials) might continue in office. That the word "official" has a definite meaning is found in the Constitution of the state, even if it was not recognized by the common understanding of the word: for section 10 of article 23 (Williams' Oklahoma Constitution) provides:

"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any **public official** be changed after his election or appointment, or during his term of office, unless by operation of law, enacted prior to such election or appointment; nor shall the term of any public official be extended beyond the period for which he was elected or appointed."

In the active question, the extraordinary session of 1924 in no wise legislated as to the "terms of office of the various county officials in the several counties of the state," either by diminishing their terms or extending same. Had the Legislature undertaken to extend the terms for which such officials were elected and then in office, it would have been without legal force or effect, as violative of the above quoted section 10 of article 23 of the Constitution. At the time the message in question was written, the terms of office of the various county officials were already fixed by law. To be sure, the Legislature might abolish certain offices. It might have diminished the term of a public official already in office, but the Legislature did not legislate or undertake to legislate under the above-quoted section of the message of the Governor as to the term of office of the public officials of the various counties of the state, but passed the bill drawn in question in this suit known as "House Bill No. 65" (Session Laws 1923-24, page 142) and undertook thereby to legislate, not as to the public officials of the counties of the

state, but to provide that the terms of the different offices should be extended from two years to four years, beginning at a certain date in the future, at the expiration of the two-year terms then running.

There is nothing in the message that even indicated that the Governor recommended or commended for consideration, favorable or otherwise, a bill which would extend the terms of county officers to be filled by persons elected in the future from a term of two years to a term of four years. The provision of the said message drawn in question here, when confined to the language used and considered in view of section 10 of article 23 of the Constitution, even if it should be considered a recommendation, carried with it nothing for the Legislature to legislate on, unless the Legislature saw fit to reduce the term of the county officials of the state, for it had no power under the Constitution to increase the term of office of the county officials, and the message does not purport to recommend that the terms of the various offices of the various counties of the state be increased, effective in the future, from two to four years.

The opinion of the majority of the court seems to hold that by reason of the last sentence of section 9, art. 6, the message was sufficient. The said sentence provides: "He (referring to the Governor) shall communicate from time to time (to the Legislature) such matters as he may elect or the **Legislature may require.**" There is nothing in the message in question that indicates that the Legislature had required anything, and certainly the Legislature, even by a resolution duly passed, could not require the Governor to recommend certain legislation, for to do so would contravene the plain import of said section 7 of art. 6, which leaves the legislation to be recommended solely to the Governor. The message begins: "At the request of certain members of your honorable body." This does not indicate that the Legislature requested anything, for it acts either by resolution or by a formal enactment. On the contrary, the message indicates that certain members had been bringing pressure to bear upon the Governor to recommend consideration of legislation which would not otherwise have been in the mind of the Governor. This, however, would not have defeated its function, if indeed the message had been a recommendation. No doubt, to placate those members, he sent the message here in question. It bears not the appearance of a recommendation. An extraordinary occasion might arise which would demand an extra session of the Leg-

islature, for a specific purpose. When convened, a sufficient number of members might want to legislate on other subjects, and refuse to meet the exigency for which it was convened, unless the Governor acquiesced in the demand that he recommend legislation not by him desired to be considered at the extra session. This procedure gives the Legislature the intimidating power over the executive branch of the state government, and by a process of duress virtually compels the executive to submit matters which should be taken up at a regular session, and for legislation on which there was no exigency, in order to secure the favorable consideration of that on which the public good demanded immediate action.

The legislation here in question was not such as brought about an "extraordinary occasion," which in contemplation of the above section of the Constitution must exist before the executive is warranted in calling an extraordinary session. The term of county offices had been two years for a long period of time. The regular biennial session had adjourned less than a year before this extra session. The next biennial session would have convened within less than a year from the date of this message. There was nothing that made this legislation necessary to be passed at an extraordinary session. There was nothing in the message of the Governor which commended for favorable consideration the legislation that was actually passed. It was without warrant, under the Constitution.

By analogy, the deductions above set out are sustained in the case of State v. Dishman (Mont.) 210 Pac. 604. Section 11 of article 7 of the Constitution of that state provided that at a special session of the Legislature there was no power to legislate on any subject not specified in the proclamation "or which may be recommended by the Governor." The extra session was called by the Governor, and thereafter a recommendation was made not contained in the proclamation. The Governor recommended "The enactment of further legislation for the suppression of illegal traffic in intoxicating liquors, and particularly recommended that such changes be made in existing laws as would harmonize our enforcement statute with the Volstead Act". Such legislation was passed. In this message, the Governor had recommended the substance of what he thought the Legislature should place in legal form. In concluding the opinion on the sufficiency of the recommendation to warrant the passage of the act drawn in question, the court said:

"It was in response to the suggestions contained in that message that chapter 9 above was enacted, and no one can contend that the message did not comprehend the subject-matter of the statute." Sweeney v. City of Butte (Mont.) 208 Pac. 943.

In the instant case, there is nothing in the message of the Governor that comprehends that which the Legislature undertook to put into the form of law.

For this reason, under the Constitution of the state. the writer is of the opinion that the attempted enactment at the extraordinary session found no recommendation in the message of the Governor, and the Legislature was without power in the premises.

The mandamus should have been granted.