[Crim. No. 7885. Second Dist., Div. Three. Sept. 20, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. HARVEY C. KATZ et al., Defendants and Appellants.

Louis Thomas Hiller and Harold J. Ackerman for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and N. Gregory Taylor, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Harvey C. Katz and David Secon were accused by indictment of multiple violations of the Health and Safety Code. Count I accused Katz of forging a prescription for dihydrohydroxycodeinone (hereinafter referred to as percodan); counts II, III, IV and V accused him of forging prescriptions for codeine; counts VI and X each accused Katz and Secon jointly of forging a prescription for percodan. Forging a prescription for a narcotic is made a crime by section 11715, Health and Safety Code.

Count XXII accused Katz and Secon jointly of selling percodan. The unlawful sale of a narcotic is made a crime by section 11501, Health and Safety Code.

Katz was convicted in a jury trial on all counts, except counts XX and XXI, on which he was acquitted.

Secon was accused, additionally, by counts VII, VIII, IX, XI, XII, XIII, XIV, XV, XVI, XVII, XVIII of forging prescriptions for percodan; count XIX accused him of unlawfully selling codeine and count XXIII accused him of unlawfully selling percodan. He was convicted on all counts in which he was separately charged and with Katz was convicted upon counts VI, X and XXII. Application of defendants for probation was denied, as were motions for a new trial, and

defendants were sentenced on all counts, the terms to be served concurrently. Defendants appeal from the judgments and the orders denying motions for a new trial.

The codeine and percodan dispensed by defendants were so combined with other ingredients as to permit them to be prescribed orally by physicians under section 11166.12, Health and Safety Code which reads in material part: "(a) Codeine, dihydrohydroxycodeinone . . . Any of the combinations mentioned in the above subsections may be dispensed upon an oral prescription which must be reduced to writing within twenty-four (24) hours, by the pharmacist. The name and address of the person for whom prescribed and the name, address, telephone number and registered number of the prescriber must be recorded on the prescription."

It is to be noted that the record made by the pharmacist is designated as the "prescription," and we may refer to it as such. All references to sections are to the Health and Safety Code.

Although the evidence was extensive, the factual issues were comparatively simple. By the testimony of Donn Mire, a handwriting expert, and by the testimony of the defendants, the authorship of each prescription was established as that of Katz or Secon, although in a few instances each had written a part of the prescription. The People's evidence was to the effect that in each instance a prescription was written or a narcotic was dispensed without a prescription by a physician. The defense of Katz was that each prescription was authorized by the physician whose name was used, either personally or through an office nurse. The defense of Secon was that he was a mere clerk, that he made out no prescription or dispensed no narcotic except upon orders of Katz, which he relied upon in good faith.

We shall consider first the appeal of Katz. He is a pharmacist, and was the proprietor of a pharmacy on Wilshire Boulevard in Los Angeles during all the time when the offenses were alleged to have been committed, namely, from December 1958 to June 1960. Secon, also a pharmacist, went to work for Katz in November 1959 and continued in his employ. Mrs. Secon did some clerical work in the pharmacy during part of the time.

The customer who obtained the drugs as charged in counts I to VI, inclusive, was Dee Stewart. Dee Stewart was a patient of a Dr. Furer, who issued two prescriptions for narcotics for her, which Katz filled. Commencing December

30, 1959, Mrs. Stewart obtained from Katz percodan or codeine under prescriptions as charged in the indictment. Katz wrote up prescriptions in each case, giving the date, the name and address of the customer, to whom the drug was sold, and the name and license number of the physician who purportedly had prescribed the drug by oral direction to Katz. Dr. Furer's name was written as that of the physician who had orally prescribed the drug. Katz testified that Dr. Furer orally prescribed the drugs, except that in one case a nurse in Dr. Furer's office authorized one prescription. Dr. Furer testified that he issued no one of the prescriptions and the nurse in question denied that she had authorized any.

Except as to count XXII, to be mentioned separately, it is not contended by Katz that there was insufficient evidence to prove that the prescriptions in question which he wrote out, and which purported to be authorized by a physician, were not so authorized.

The prescription to which count X related, which was written in part by Katz and in part by Secon, purported to have been authorized orally by a Dr. Ablon. It was in favor of Dr. Ablon's patient, Norma Krause. Dr. Ablon testified that he did not issue the prescription.

The contentions of Katz on appeal are (1) the evidence was insufficient as to counts I to VI, inclusive, and count X for the reasons (a) there was no evidence that the drugs were delivered and (b) an oral prescription, whether authorized or not, cannot be the subject of forgery; (2) prejudicial error was committed in the giving and refusal of instructions; (3) Katz was improperly cross-examined as to the commission of other offenses, and error was committed in permitting evidence on rebuttal of other offenses, as to which Katz was cross-examined and evidence of a shortage of narcotics; and (4) there was insufficient evidence to support the conviction on count XXII.

With respect to the contention that there was insufficient evidence to prove that Dee Stewart and Norma Krause received the drugs pursuant to the prescriptions for the same as charged in counts II, III, IV, V, VI and X (the forgery counts), the briefs of Katz do not purport to state the evidence. Only general statements are made, without transcript references. Dee Stewart testified to having repeatedly gone to the pharmacy, when bottles she carried were refilled with the narcotics. Norma Krause testified that the drugs she ordered were delivered to her as she directed. There was no

suggestion in the testimony of either defendant that the prescriptions were not filled and paid for. ■■■ Moreover, if the prescriptions were forged by Katz, as charged, with intent to make use of them as valid prescriptions, it would have been immaterial whether the drugs were actually dispensed. However, there was sufficient evidence that the patients received and paid for the drugs.

■■■ Katz contends that the words "Every person who forges or alters a prescription" contained in section 11715 relate only to written prescriptions which must be signed by a physician. He says that the "prescription" is what the physician issues, whether it be in writing or oral, and that a record of what purports to be an authorized oral prescription cannot be the subject of a forgery. No authority is cited for this proposition and the arguments advanced in support of it are not tenable.

The subject of regulation is the administering of the drug, or making it available to the patient. The means by which it may be done are the measure of the authority to furnish the drug. The written prescription of a physician is at once a record of the physician's act of prescribing, of the authority of the pharmacist to dispense the drug, and of the patient to receive it. With respect to some narcotics the prescriptions must be from a prescription book, and in triplicate, all signed by the prescriber; the original and a duplicate must be delivered to the pharmacist and must be endorsed by him at the time the prescription is filled; the original must be retained by the pharmacist and each month the duplicates must be returned to the State Division. The book containing the duplicates retained by the prescriber must be preserved for two years and be open at all times for inspection by authorized persons. (§§ 11166.10 and 11166.11.)

Although codeine and percodan may be prescribed orally, without the use of official triplicate blanks, it is mandatory that the pharmacist write up the prescription within 24 hours, containing all the data listed in section 11166.12. This is a procedural step which must be taken in order to give validity to the dispensing of the drug. The prescription written up by the pharmacist furnishes a record as to the means used by the physician to provide the drug for his patient and is a part of the overall system of control of the use of narcotics. It is in the public interest that the records be true and reliable with respect to all matters they must contain. As to those matters, false statements, made with

knowledge of their falsity, imply an indisputable intention to deceive.

At the request of Katz, the jury was instructed: "The word 'Forgery' as defined in Webster's, Unabridged Dictionary is as follows: The act of forging, fabricating, or producing falsely; especially, the crime of fraudulently making, counterfeiting, or altering any writing, record, instrument, register, note, and the like to deceive, mislead, or defraud; as, the forgery of a document or signature." This was the only instruction requested or given which purported to define the offense of forgery. ▮▮ Contrary to the contentions of defendants, forgery is not limited to the forgeries of signatures. (*People* v. *McKenna*, 11 Cal.2d 327 [79 P.2d 1065].)

▮▮ Katz requested and the court refused an instruction reading: "In order to find the defendant Harvey Katz guilty of the counts involving a violation of Section 11715 of the Health and Safety Code, as previously read to you, you must find on each of said claimed forgeries that the defendant Katz committed the same with an intent to defraud." Of the refusal to give this instruction Katz is content to say "There is nothing improper about this instruction. It states a correct theory of law as it applies to crimes of this nature." No authority is cited for this statement.

It was not error to refuse the instruction. ▮▮ A specific intent to defraud is not an element of the crime of forging a prescription for narcotics to be proved independently of the act of writing a false prescription to serve as a record of the transaction. The false prescription, itself, is a representation that the law has been obeyed when, in fact, it has been violated. The purpose to be served by a prescription lawfully issued is frustrated. The purpose to deceive could no more be denied than could be the act of counterfeiting money.

It is unnecessary to enumerate and distinguish the forgeries of the conventional type which are the means of committing frauds, such as those enumerated in section 470 of the Penal Code, and the types, such as the present one, in which the intention to deceive is manifest. ▮▮ It was not necessary that an intent to defraud any person be proved, since no person was defrauded. Section 11715 does not require proof of an intent to defraud as an element of the crime of forging a prescription.

The argument was made in *People* v. *Brown*, 113 Cal.App. 492 [298 P. 503], that a prescription for narcotics is not the

subject of forgery for the reason that no one is defrauded. The argument was rejected. The crime was said to be against the state and consists of obtaining the narcotic by means of the false writing. ■ It is clear that the writing of a prescription by a pharmacist which is wholly false is a forgery.

In their case in chief, the People introduced in evidence prescriptions written by Katz in whole or in part corresponding with the several counts of the indictment and the same procedure was followed in proving the charges against Secon. Upon cross-examination of Secon, he was questioned whether he had not written specific prescriptions, not charged as forgeries. In overruling objections the court ruled that the evidence sought to be elicited was "good rebuttal."

In the cross-examination of Katz he was shown a dozen or more prescriptions in favor of Norma Krause and identified several of them as having been written by Secon and the remainder by himself. He was asked whether he had ever dispensed codeine or percodan without a doctor's prescription and answered that he had not. He was shown and identified an additional 15 prescriptions in favor of patients Strong, Linkoff, Blossom Cohen, Kurnick, Pearce, Rose Clark, Rose McDonald and Stewart, which purported to have been issued by Doctors Ablon, Shafer, Davidson, Gelfand, Weiner and Cohen. All these prescriptions were marked for identification as People's exhibits 32 through 63.

Donn Mire, called in rebuttal, was shown these exhibits and testified that about half of them had been written by Katz and half by Secon.

Doctors Ablon, Shafer, Davidson, Weiner and Cohen were called in rebuttal. They were shown a number of the exhibits consisting of prescriptions in favor of Strong, Linkoff, Blossom Cohen, Mr. Kurnick, Mrs. Pearce, Rose Clark, Rose McDonald and Murray Stewart, which purported to have been authorized by the several doctors. The doctors were questioned whether they had authorized the prescriptions that had been filled. Objections were made upon the ground that the evidence was not admissible as rebuttal, and upon other grounds. In each instance the objections were overruled. The doctors denied having authorized the prescriptions. Nurses from the doctors' offices were called and testified they had never authorized a prescription for a narcotic except at the direction of their employers.

Also called as witnesses were Kurnick, Linkoff, Rose Clark, Lorraine Pearce and Rose McDonald. Over objection Mrs. Pearce testified that she did not receive the drug for which a prescription had been written in her favor and the other witnesses testified that in the 14 instances when 100 pills had been prescribed they received only 50.

When the 32 exhibits were offered in evidence objections were interposed by defendants upon the grounds that they tended to prove no issue in the case, were highly prejudicial, were not relevant to any of the testimony of defendants given on direct examination, were improperly offered in rebuttal and not as a part of the People's case in chief. Objections were made also to specific exhibits. The objections were sustained as to exhibits 54 and 62 upon the ground that authorship had not been established. All other exhibits were admitted against Katz. The objections of Secon that he had not been identified as the author of certain prescriptions, numerous of which had been issued prior to his employment, were sustained. The court ruled, and stated to the jury, that all said exhibits, except 54 and 62, were admitted against Katz and all except numbers 33, 34, 35, 36, 38, 39, 50, 54, 62 and 63 were admitted against Secon.

In presenting their objections to receipt of exhibits 31 to 63, defendants also argued that it was highly improper and prejudicial for the People to hold back evidence to be used in rebuttal when it should have been offered in their case in chief. The district attorney argued that the evidence was admissible in rebuttal to impeach the testimony of defendants that they had issued no unauthorized prescriptions, and also to show they had guilty intent and were operating under a common scheme and plan. He conceded that he had purposely held back the testimony for those purposes. The court stated that it was in agreement with the position of the district attorney and the objections were overruled.

There was other evidence introduced by the People in rebuttal. Louis Price, an agent of the department, received from Katz a large number of prescriptions for codeine and percodan. Price made an investigation as to the number of codeine and percodan pills Katz had received and the number he had dispensed over the period June 1, 1958 to July 1, 1961. He testified, over objection by Katz, that he had verified from the records of Katz and from suppliers, the number to be accounted for, compared the total with the number shown by Katz's records to have been sold and with the number re-

maining on hand. The result to which he testified was that there was a shortage of 8,553 codeine pills and a shortage of 11,548 percodan pills.

We are of the opinion that all the foregoing rebuttal evidence was improperly received. In the orderly course of a trial it is the duty of the prosecution to introduce, as part of its case in chief, all its evidence which tends to prove any element of the offense charged. The rebuttal evidence respecting the writing of prescriptions in the names of the several doctors who testified in rebuttal would have been admissible as a part of the case of the People to prove intent and a scheme and practice of the defendants to write unauthorized prescriptions, and to use the same as a basis for the unlawful dispensing of the drugs. It is a familiar rule which requires no elaboration or the citation of multiple authorities. Numerous cases stating the rule are listed in 22 California Jurisprudence 2d, Forgery, section 40 (Cum. Supp. 1961). (*People* v. *Grey,* 180 Cal.App.2d 683 [4 Cal.Rptr. 561].)

The rebuttal testimony given by the doctors and that given by the persons in whose names the prescriptions were written not only confused the issues but it interfered with the orderly trial of the case and introduced an entirely new issue. The evidence of the People in their case in chief, if relied upon by the jury, was clearly sufficient to prove that it was the practice of the defendants to write unauthorized prescriptions. In their testimony neither defendant asserted that any prescription was written without an intention to fill it, or that any of them was written inadvertently. When the defense had rested the issue was clear-cut; either the prescriptions had been authorized or they had not been. The question was one of the credibility of the defendants on the one side and that of the doctors and the nurses on the other. If the prescriptions had been authorized the defendants were not guilty of the forgeries charged; if they had not been authorized, one or the other or both defendants had been engaged in a systematic practice of forging prescriptions. The testimony of the doctors in rebuttal was merely cumulative. It differed in kind in no respect from the evidence of the People in chief, but was merely a piling on of evidence belonging to the original case. There was no need and no justification for it in order to rebut the testimony of the defendants, which had consisted of mere denials of facts testified to by the People's witnesses.

The People urged upon the trial court, and now contend,

that the evidence of the doctors was admissible in rebuttal as impeachment of the testimony of Katz, elicited on cross-examination, that he had never issued prescriptions without authority from the office of a physician and to prove the intent and practices of the defendants. We cannot agree with this contention. The district attorney announced that his reason for the cross-examination of Katz with respect to prescriptions other than those alleged to have been forged was to lay a foundation for the introduction, as rebuttal, of impeaching evidence. But the purpose was to get before the jury, as rebuttal, evidence of actions of defendants which clearly belonged to the People's case in chief. When this purpose was disclosed the objection to the cross-examination in question that it was outside the scope of the direct examination should have been sustained. Since the plan to lay a foundation for impeaching evidence in rebuttal was not cut off during the cross-examination of Katz the testimony of the doctors in rebuttal should have been excluded as improper rebuttal.

It cannot be doubted that the procedure was highly irregular. ▉ Code of Civil Procedure, section 607, prescribes the order of proof in a trial. The plaintiff may produce the evidence on his part; the defendant may then offer his evidence; the parties may then offer rebutting evidence only unless the court, for good cause, in furtherance of justice, permits them to offer evidence on their original case.

▉ ''When the case of the People is closed and the defense is in, the remainder of the People's case is limited to evidence in rebuttal of that produced by the defense and should be so limited by the court, except where a proper showing is made for reopening the case in chief for the receipt of further evidence. The People have no right to withhold a material part of their evidence which could as well be used in their case in chief, for the sole purpose of using it in rebuttal.'' (*People* v. *Rodriguez,* 58 Cal.App.2d 415 [136 P.2d 626].)

No good cause was shown for offering the rebuttal evidence. No request was made to reopen the People's case. ▉ The district attorney had planned to use the evidence in rebuttal to prove the wrongful intent of the defendants and as impeachment of their testimony elicited on cross-examination. The People had no more right to introduce the testimony of the doctors and the prescriptions, as rebuttal, under the guise of impeachment, than they would have had to introduce the

same evidence if Katz had not been cross-examined on the subject.

Since the error was manifest the question is whether it was seriously prejudicial. The Attorney General contends (1) that the defendant should have anticipated the use of the rebuttal evidence because the prescriptions used in that evidence had been marked as exhibits in proceedings before the grand jury (it is not stated that any testimony was given concerning them) ; (2) the prescriptions had been obtained from Katz; (3) defendants were given an opportunity to meet the rebuttal evidence; (4) the jury was instructed that the rebuttal evidence was to be considered only for its bearing on the intent and state of mind of the defendants, and (5) ''While the People could have used that evidence as it was introduced in the case as part of the proof of their case against appellants, they did not do so.''

None of these matters furnished justification for the use of more than 30 prescriptions in rebuttal which had not been made a part of the People's original case, or for receipt of the evidence that in some 15 instances the customers had not received the drugs the prescriptions called for, or had received only 50 pills when the prescription called for 100.

As previously stated, the testimony of witnesses Linkoff, Rose Clark, Lorraine Pearce and Rose McDonald, received as rebuttal, introduced a new theory of violation of law by the defendants, namely, that in 15 instances false and fictitious prescriptions were written for these persons for drugs they did not receive at all, or for quantities in excess of the number of pills received. The testimony of these witnesses did not tend to prove that the prescriptions were written without authority from physicians. It is doubtful that it would have been admissible, at all, as evidence of a scheme to commit forgeries. But there can be no doubt that it placed the defendants under suspicion of having engaged in fraudulent practices and cast upon them the duty of proving they had not cheated their customers or prepared false records. The harm done is manifest.

It was error to overrule the objections of Katz to the testimony of Price that he had made an investigation of the quantities of codeine and percodan that Katz had reported as on hand and that he had purchased since June 1958, the quantities accounted for by the prescriptions he had received from Katz and the quantities still on hand, and had found some 20,000 pills unaccounted for. We find nothing in the

record which tells us whether this evidence was received against Katz alone, or that the jury was instructed to that effect. Manifestly, the evidence was inadmissible against Secon, since the period taken into consideration by Price included a year and a half before Secon was employed.

The evidence of the apparent shortage was erroneously received. The jury was not instructed with respect to the significance of the evidence of the shortage of pills, or for what purpose it could be considered. The reasonable inference the jurors would have drawn was that since Katz had not explained the shortage of pills he must have sold them illegally and have been carrying on a protracted practice of violating the narcotic laws by means of forgeries and other devices. So believing, the jurors would have found it difficult to acquit him of the charges for which he was on trial.

We hold only that it was error to receive the testimony of Price as rebuttal evidence. A further question was whether the evidence would have been admissible as a part of the People's original case. For two reasons we do not decide this question. In the first place, the evidence was not offered as a part of the original case; in the second place, the point is not briefed. Defendants argue against the receipt of the evidence in rebuttal; the brief of the Attorney General does not seek to justify the admission of the evidence of the shortage of pills.

Section 11227 declares that proof of the shortage of narcotics, such as Price testified to, is prima facie evidence of guilt in any prosecution under division 10 (the narcotic laws). The briefs do not mention this section. We mention it to point out that if the section should be relied upon by the People in the present case it would have to appear that the shortage of pills was competent evidence that the defendants had committed forgeries. And independently of section 11227 the same question would arise, namely, whether the fact of the shortage of the pills would be competent evidence to prove that the pharmacists had committed forgery.

We conclude that the evidence introduced as rebuttal, taken as a whole, was seriously prejudicial.

 At the request of the People the court gave the following instruction: ''You are instructed that it is the law of this state that a prescription in order to be effective in legalizing the possession of unstamped narcotic drugs and eliminating a necessity for use of order forms must be issued for legitimate medical purposes. The responsibility for the proper prescribing and dispensing of narcotic drugs is upon

the practitioner, but a corresponding liability rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued to an addict or habitual user of narcotics in the course of professional treatment but for the purpose of providing the user with narcotics sufficient to keep him comfortable by maintaining his customary use, is not a prescription within the meaning and intent of this division of the Narcotic Act of the State of California; and the person filling such an order, as well as the person issuing it, may be charged with violation of the law.''

We are of the opinion that the court committed error in giving this instruction and that the error was clearly prejudicial.

The Attorney General says that the defendants were not accused of selling narcotics to addicts or habitual users and the jury could not have been misled or confused as to the specific offenses to which all the evidence related. This does not answer the contention that the instruction, in the light of the evidence, improperly stigmatized defendants as persistent violators of the law in respects wholly unrelated to the charges laid.

The jurors could have believed the testimony of Katz that it was a common practice to contact nurses, rather than the doctors, with respect to requests for codeine and percodan, as renewals of prescriptions previously issued by the doctors, and to receive consent from the nurses, speaking for the doctors. The procedure in authorizing the furnishing of codeine and percodan was surprisingly informal. It is not clear that the doctors understood they were required to keep records of prescriptions issued orally. Pharmacists were required to write out prescriptions which could be authorized from the doctor's office by telephone, but were not required to report to the department. According to the evidence as to the effects of the drugs upon users, they were effective to relieve pain, and as so-called tranquillizers. The quantities that might be dispensed were within the discretion and judgment of the doctors, unless the user was an addict or habitual user. As to these users the physician and the pharmacist would each violate the law if he made available to them codeine or percodan merely to keep them comfortable by maintaining their customary use; and the jury was so instructed.

If Dee Stewart and Norma Krause were not addicts they were, as any juror would believe, habitual users. And the

jurors were left to decide for themselves what practices would make one an addict or habitual user.

Dee Stewart testified that she was a customer of Katz's pharmacy during 1958, 1959 and 1960. She visited the store two or three times a week. She usually got 24 pills of percodan, sometimes more. First she had a prescription. "The second, third, fifth or the hundredth time that it was refilled, I did not have a prescription." Each time Norma Krause received percodan she would get 50 or 100 pills at a time. She testified: "Well, Dr. Ablon was supposed to have the order in. Q. An order for an unlimited supply of narcotics? A. Well, I can't say unlimited but over a period of time." She had previously been under Dr. Ablon's treatment for several years and had been taking percodan since she was 16.

At the commencement of the cross-examination of Katz he was asked by the district attorney whether the use of percodan could cause addiction, whether he knew Dee Stewart was addicted to codeine or percodan, and whether he had stated to Narcotics Inspector Blanchard that Dee Stewart had become addicted. To the question whether codeine or percodan could cause addiction Katz's attorney objected upon the ground that the question called for a conclusion. The objection was overruled, the court stating: "Well, the man is a pharmacist and he should know." Katz answered that the drugs would not cause addiction. He also answered that he did not remember telling Blanchard that Dee Stewart had become addicted.

Under examination by the district attorney Price testified that Secon quoted Katz as saying of Norma Krause that Dr. Ablon knew she was an addict, but for Katz to give her what she needed.

Norma Krause received 700 percodan tablets from defendants in March 1960 on prescriptions written by defendants, purportedly upon authorization of Dr. Ablon. From March 1 to December 14, 1960, she received from defendants 1,500 percodan tablets. Throughout the evidence frequent references were made by the district attorney to the fact that Dee Stewart and Norma Krause were probably addicts. The Attorney General in his brief says that there could be little doubt in reasonable minds that Norma Krause was an addict and habitual user, and that the evidence of the quantities of percodan she used provided the basis for the instruction on selling to addicts and habitual users. The People still contend that

it was proper to tell the jury about selling to addicts because Dee Stewart and Norma Krause were shown to be addicts. But the evidence of addiction, so frequently referred to by the district attorney during the trial, instead of justifying the giving of the instruction, furnished a compelling reason for not giving it.

Although codeine and percodan had been prescribed for the two women on previous occasions in the course of legitimate medical treatment, their long-continued use of the drugs was not shown to have been for legitimate medical purposes. The jury could reasonably have believed that the purpose of continuing a customary use was to keep the users comfortable.

The defense of Katz rested entirely upon his testimony that the authority he received came directly from the doctors or from the nurses with permission of the doctors. The verdicts do not necessarily mean that the jury determined that all the prescriptions were written up without authority. The jurors could have believed the testimony of Katz and still have believed that the doctors and the nurses, on some or all occasions, authorized the dispensing of the drugs, not as treatment for any ailment, but to enable Dee Stewart and Norma Krause to maintain their customary uses. And if the defendants had been aware of this, each act of dispensing a drug to these women was a criminal offense.

When the defendants were on trial for forgery it was error to so instruct the jury as to call their attention to possible other and different violations of law that might be developed in the evidence. And we do not doubt that the jury in its deliberations and in weighing the credibility of witnesses was influenced to the prejudice of defendants by the instruction which suggested they might be guilty of other crimes. The gravity of the error in the instruction must be weighed with the error in the receipt of the testimony in rebuttal, and especially the testimony of Price as to the shortage of many thousands of narcotic pills. The questioning of the defendants and the other references made by the district attorney to Dee Stewart and Norma Krause as addicts and habitual users of narcotics was highly prejudicial. Weighed together, the errors and irregularities of procedure deprived defendants of a fair trial.

There was other error of which Secon justly complains. Each defendant requested an instruction which read: "An act committed or an omission made under an ignorance or mistake of fact which disproves any criminal intent is not

a crime. Where a person in good faith believes in the existence of certain facts, and acts or omits to act with reference to such believed facts in a manner which would be lawful if the facts were really as he believes them to be, he is not guilty of crime, although his act or omission is such that if committed or made by one who knew the true facts it would constitute a criminal offense.''

The instruction was refused. Katz was not entitled to the instruction. It was not applicable to his defense. Secon, however, had presented as a defense his reliance upon the representations of Katz that the doctors had orally prescribed the narcotics that were dispensed. In fact this was Secon's only defense and it was vigorously urged by his attorney. The nature of the defense which was maintained throughout the trial was expressed by his attorney in addressing the jury. He said: ''I told you at the outset that the Defendant David Secon was simply and solely an employee of Mr. Katz and drew his authority to write the prescriptions which he has been charged with writing from Mr. Katz. . . . In the course of this lawsuit and in the course of this argument, nothing has been pointed out to you which indicates that Mr. Secon did not have the right to rely upon Mr. Katz for advice as Mr. Secon has reported it to be to you. . . . Mr. Secon did not derive any financial benefit as a result of larger sales nor did he suffer in losses as a result of smaller sales. . . . his only financial interest was the salary which was paid by Mr. Katz.''

Not only did Secon testify that he relied upon the instructions he received from Katz, but he identified many of the prescriptions, specifically, as having been written at the direction of Katz. There was no substantial contradiction of this testimony. The jury could very well have believed it and accepted it as a good defense to the charges laid against him.

Count XXI accused Katz of having forged a prescription for Norma Krause, dated 12-2-59, which purported to have been authorized by Dr. Ablon. It called for 100 tablets of percodan and was written by Katz. ▋▋ Count XXII accused Katz and Secon of having forged a prescription dated December 14, 1959, for 100 tablets of percodan in favor of Norma Krause. The prescription was written by Katz and initialed by Secon. Katz was acquitted on count XXI and both defendants were convicted on count XXII.

Both defendants contend the evidence was insufficient to justify the conviction. We believe it was insufficient. Dr. Ablon testified that he might have authorized the prescription

of December 2 or the one of December 14, but that he would not have authorized both. He had no recollection or record of either prescription. During that period he received several phone calls from Norma Krause and he could have prescribed percodan for her, although he had not seen her for the preceding four or five months. He might prescribe more than 100 percodan tablets in a month in very extremely critical situations. He did not "feel" he would have prescribed 200 percodan tablets for Norma Krause in one month. He did not remember what he did or did not do, but only what he might or might not have done. We think the evidence as to count XXII was too uncertain and problematical to furnish the basis for conviction of a felony.

A single prescription, dated June 7, 1960, was the basis of counts XVIII (forgery) and XXIII (sale). It was written by Secon, in favor of Norma Krause, for 100 percodan tablets. Dr. Ablon, whose name appeared as the prescriber, testified he did not authorize it. Secon was convicted and sentenced for the two offenses and he contends that double punishment has been imposed for a single act, in violation of section 654 of the Penal Code. We cannot agree. Section 654 provides that if one act or commission is made punishable in different ways by different provisions of the code it may be punished under either provision but not under both. It is settled that if the conduct is indivisible it constitutes a single act, but if the action constituting one offense is independent of that constituting the other, and accomplishes a different purpose, section 654 has no application. (*People* v. *Logan*, 41 Cal.2d 279 [260 P.2d 20]; *Seiterle* v. *Superior Court*, 57 Cal.2d 397 [20 Cal.Rptr. 1, 369 P.2d 697]; *Downs* v. *State of California*, 202 Cal.App.2d 609 [20 Cal.Rptr. 922].)

The purpose of the forgery was to make a record to account for dispensing of the narcotic. The record was not a necessary part of the sale and could have been made either before or after the sale. Either act would have accomplished a particular purpose if the other had not been committed.

Secon assails the sufficiency of the evidence upon the following grounds (1) there can be no forgery of an oral prescription; (2) section 11501 relates only to the sale of narcotics which must be prescribed by writing in the hand of the physician, and (3) if defendants were guilty at all it was of violation of section 11165 or section 11168, which would be misdemeanors.

We have already held that the recording by a pharmacist of a purported oral prescription is forgery of a prescription, and a violation of section 11715.

Section 11501 relates to the sale of any narcotic other than marijuana, "[e]xcept as otherwise provided in this division," which exception, in the present case, would be section 11166.12. ▇ A sale made in conformity with the requirements of section 11166.12 would not be in violation of section 11501, but a sale which did not meet the requirements of section 11166.12 would not be within the exception of section 11501. If section 11166.12 had been complied with in every instance, defendants would have been guilty of no forgery and no unlawful sale. But defendants did not meet the requirements of that section. Section 11165 reads: "No person shall issue a prescription that is false or fictitious in any respect." Section 11168 reads: "No person shall prescribe, administer, or furnish a narcotic except under the conditions and in the manner provided by this division." Secon contends that these are specific enactments, violation of which is a misdemeanor under section 11716. Sections 11501 and 11715, he says, are general in scope, and he invokes the rule "that a specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter standing alone, would be broad enough to include a subject to which the more particular provision relates." Sections 11165 and 11168 are the broad, comprehensive ones, which embrace all the regulatory provisions of division 10.

In *People* v. *Lawrence*, 198 Cal.App.2d 54 [18 Cal.Rptr. 196], it was contended that section 11168 (a misdemeanor section) would be violated by prescribing narcotics for an addict in violation of section 11164, a felony, and that it was an offense necessarily included in section 11164. In rejecting this contention, the court said (pages 66, 67): "Moreover, it is clear that the Legislature had definitely in mind, in adopting section 11164, that while the terms of section 11168 might be broad enough to include prescribing for an addict, nevertheless it intended that the more serious offense be specifically provided for and with a more serious penalty. Section 11168 is a catch-all section never intended to replace the more specific section." ▇ Sections 11501 and 11715 are the specific sections. They prescribe punishment as for felonies and are, therefore, taken out of the operation of section 11716, which denominates as misdemeanors violations of the pro-

visions of division 10 for which no other punishment is specially prescribed.

The contention of Secon that the evidence was insufficient to support his conviction on count XIX is not sustainable. We have examined the evidence and have concluded that it was sufficient to prove that Secon participated in the sale of a narcotic to Murray Stewart as charged in count XIX.

We have examined other assignments of error urged by the defendants and find that none of them is well founded or deserving of particular discussion.

The judgments and orders denying motions for new trial are reversed upon all counts as to each defendant.

Ford, J., concurred.

Files, J., concurred in the judgment.

A petition for a rehearing was denied October 10, 1962, and respondent's petition for a hearing by the Supreme Court was denied November 13, 1962.