[Crim. No. 9350. Second Dist., Div. Two. May 17, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. HARVEY C. KATZ et al., Defendants and Appellants.

Louis Thomas Hiller, Darling, Shattuck, Hall & Call and Thomas F. Call for Defendants and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and N. Gregory Taylor, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendants, licensed pharmacists, were accused by an indictment charging them with several violations of section 11715 of the Health and Safety Code (forgery of narcotic prescriptions), and section 11501 of the Health

and Safety Code (illegal sale of narcotics). Their first trial resulted in their conviction. The judgments were reversed on appeal by reason of certain errors committed by the prosecution in the improper presentation of evidence as rebuttal which should have been presented as part of its case in chief and by certain erroneous instructions given by the trial court. (*People* v. *Katz,* 207 Cal.App.2d 739 [24 Cal.Rptr. 644].)

Upon retrial, the charges against appellants remained essentially the same, although certain of them were renumbered. The count held by the cited decision to be lacking in sufficient evidentiary support was dismissed upon motion of the prosecution.[1] By the judgments entered upon the jury's verdicts returned at the conclusion of the second trial, appellants were found guilty as charged, except that appellant Secon was found not guilty of Count VI. The present appeals are from these second judgments.

No useful purpose would be served by an extended recital of the evidence since it is substantially identical to that set forth at length in the above cited decision of the first appeals. In addition, most of appellants' contentions regarding the sufficiency of the evidence and the admissibility of various portions thereof are adequately discussed and properly rejected in this original decision, although the former judgments were reversed by reason of other errors which did not recur during the second trial.

The evidence was not only sufficient, but overwhelming. ■ No error was committed in receiving evidence of other forged prescriptions and other unlawful sales with which appellants were not specifically charged, because this evidence properly could be considered by the jury in evaluating appellants' testimony to the effect that any acts on their part were innocent or, at worst, negligent errors. (Cf. *People* v. *Katz, supra,* 207 Cal.App.2d at p. 749.) ■ Evidence with respect to the addicting properties of the drugs involved and the addicted condition of the persons to whom they were sold was relevant to the issue as to whether or not the doctors had prescribed the quantities of drugs dispensed by appellants. (*People* v. *McAffery,* 182 Cal.App.2d 486, 491 [6 Cal.Rptr. 333]. The instruction criticized in *People* v. *Katz, supra,* p. 755, was not given on this second trial.) ■ The checks given by one of these persons to the pharmacy operated by appellants during the period in issue also were properly

---

[1] Upon retrial Appellant Katz was not charged with violating section 11501 of the Health and Safety Code.

admitted in support of the maker's testimony regarding the purchases for which the checks were given in payment. (*People* v. *McAffery, supra,* p. 491; *People* v. *Porterfield,* 186 Cal. App.2d 149, 158-159 [8 Cal.Rptr. 897].) The instructions given by the court, considered as a whole, were entirely adequate and no necessary or proper instruction was requested and refused. (*People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116].) Appellants have wholly failed to show how they could have been prejudiced in the slightest degree by any of the instructions given.

Since the errors which required the reversals of the first judgments were not repeated in the course of the second trial, only those of appellants' present contentions which were not fully considered and rejected on the former appeals need now be considered with particularity. These involve (1) the use of a portion of a letter written by appellant Katz to the probation department following his initial conviction herein; (2) the alleged prejudicial misconduct of the prosecution during argument; and (3) the possible applicability of the recent decision in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361], to the instant factual picture.

Now we proceed to deal with the first of these contentions. Appellant Katz had stated that he would never rely on the word of Norma Krause (one of the customers involved in these transactions) that her doctor had authorized a prescription for her to receive percodan. Thereafter he was asked by the deputy district attorney whether or not he recalled writing a letter to a Mr. Carter, an officer of the court, after the last trial and he acknowledged that he did. Mr. Carter was the probation officer assigned to this case after the first trial, but this fact was never mentioned to the jury.

Prior to the impeachment to which exception is now taken, counsel for appellant Katz and the attorney for the prosecution discussed with the court outside the presence of the jury the propriety thereof and the procedure to be followed. In this discussion, counsel for Katz expressly stated that he had no objection to the use of the limited portion of the letter by the prosecution in its cross-examination. Further, it was stipulated that the first portion of the letter read to appellant Katz would be altered in such a manner as to omit any reference to his conviction at the first trial. After these preliminaries were agreed to, appellant Katz admitted having written the following statement contained in the letter:

" 'With respect to Norma Krause, I admit I might have been negligent in placing too much reliance on the word of the patient involved and the blanket authority given to me by the doctor and his office. I realize that such conduct on my part was not excusable.' "

It is now contended that this impeachment constituted prejudicial error since the letter "was specifically written in the hope of obtaining favorable reward and under the circumstances cannot be considered as a free and voluntary statement." Obviously we need not now decide whether or not the propriety of this method of impeachment would be questionable if appellant had interposed some objection.

■ We do hold, however, that where, as here, it has been expressly agreed during trial that no objection is made thereto and the question is asked and answered in strict conformity with stipulated conditions, such proceeding cannot be assigned as error for the first time on appeal. (*People* v. *Garner*, 57 Cal.2d 135, 154 [18 Cal.Rptr. 40, 367 P.2d 680].)

■ Appellants' contentions regarding the alleged misconduct of the prosecution during the argument to the jury are likewise without merit. No objection was made thereto during the trial, and, for this reason alone, there remains no ground for reversal; in this case the evidence is not closely balanced and there is no reasonable doubt of appellants' guilt. Even if the remarks of the prosecutor could be regarded as improper, they clearly were not of such character that any harmful effect could not have been obviated or cured by a retraction of counsel or by appropriate instructions. (*People* v. *Lyons*, 50 Cal.2d 245, 262 [324 P.2d 556].)

■ Further, we find no impropriety whatsoever in the three specific instances cited by appellants as the basis for their contentions in this respect. Initially, appellants cite the following remark made by the deputy district attorney during argument with reference to one of the witnesses called by the prosecution: "He seemed to be, *from his testimony and from his demeanor on the witness stand,* to be a pretty honest, forthright individual with no axe to grind one way or the other." (Italics added.)

■ " [I]n his argument to the jury the prosecutor may comment upon the credibility of witnesses 'in the light of all the evidence in the case' [citations], '[i]t is misconduct for a prosecuting attorney to express his personal belief as to the reliability of a witness.' [Citations.]" (*People* v. *Perez,* 58 Cal.2d 229, 245 [23 Cal.Rptr. 569, 373 P.2d 617].)

The challenged remarks in the instant case were entirely proper comment upon matters presented to the jury. It would be most unreasonable to hold that they constituted inappropriate expressions of the prosecuting officer's *personal opinion* derived from unspecified sources. The fact that comments upon the testimony of certain witnesses made in an argument have been couched in the first person does not of itself render them improper. (*People* v. *Rosoto,* 58 Cal.2d 304, 361 [23 Cal.Rptr. 779, 373 P.2d 367].)

The setting for appellants' second assignment of alleged misconduct was developed in the manner now to be described. Appellant Katz had conceded during his testimony that he had made mistakes in his work; and his defense, in essence, was that he was guilty of no more than negligence and of no intentional and criminal misconduct. This was confirmed during the argument of his counsel who stated:

''I will agree with you that as far as making errors is concerned, there is no question about, that he did make errors, at times being negligent in the operation of the pharmacy. I will agree with you, there is no question that at times he was negligent, but, mind you, ladies and gentlemen, he is not here being accused of being an experienced [*sic*] pharmacist, of being a careless pharmacist, or being a negligent pharmacist, he is being accused here of wilfully, intentionally and feloniously forging the prescriptions for narcotics.''

 In proper response to this expressed theory of defense, the deputy district attorney replied as follows during his closing argument: ''Well, I think I can answer Mr. Hiller [counsel for appellant Katz]. Mr. Hiller would have you believe that Harvey Katz is a poor, negligent man who only put 2700 pills into a 21-year-old girl's hand. *He is just a little negligent man.''* Since this challenged statement undeniably was factually correct, it was well within the permissible range of argument despite the fact that its sarcastic or scoffing tone might in some degree be considered inflammatory in effect. (*People* v. *Ketchel,* 59 Cal.2d 503, 540-541 [30 Cal. Rptr. 538, 381 P.2d 394].) Indeed, in the context of this record, its nature was mild and restrained.

Appellants' final assignment on the subject of misconduct concerns the prosecution's argument to the jury regarding the motive for appellant Secon's part in the various illegal transactions. Appellant Secon had been a pharmacist much longer than had appellant Katz, and, up to a year prior to

his going to work at the Wilshire Medical Pharmacy, Secon had owned a pharmacy himself. Financially, appellant Secon was quite secure and his involvement with appellant Katz appeared to be motivated mainly by his desire to see Katz succeed in his first venture in operating his own pharmacy.

In his closing argument, the deputy district attorney responded to appellant Secon's contentions regarding lack of motive as follows:

"Mr. Ackerman [appellant Secon's counsel] brought up the question of motivation and he said that this man is worth in excess of $80,000 and what is the motivation or the lack of motivation? Well, I asked Mr. Secon, and he said he was emotionally involved, he said he was emotionally involved with Mr. Katz. You know, all motive is not monetary motive. There is more than that. I don't think that money is everything in this world, and I have always taken that position, and that is why I am a County employee. There is more to this earth than just money for someone in excess of $80,000, and this is from what I understand from modernday psychiatry or psychology, that whenever it is shown that a man has an emotional involvement, whatever that might be, it could be just as strong a motivating factor for illegal and illicit conduct as anything else."

There can be no question but that more than sufficient basis and justification for this argument are provided by appellant Secon's own testimony. The following questions were asked and answered: "Q. Didn't you feel that Mr. Katz needed your help? A. You have—yes—after a while I felt that I could be of some help, but that isn't why I went to work there. Q. Well, after you went to work there, you became, did you not, emotionally involved? A. After a period of time."

Both appellants, however, now take the position that by this argument the deputy district attorney "inferred [sic] that there was an unnatural relationship between Katz and Secon." This contention necessarily must be based upon matters *outside* the written record, for certainly the record does not justify it. It may speak something sinister about appellants Katz and Secon, but it casts no semblance of a shadow upon the entirely proper performance of the deputy district attorney. In addition, it is wholly immaterial what the deputy district attorney may have "inferred" regarding appellants so long as he did not. by his remarks to the jury, "imply" that an unnatural relationship existed between them. Certainly it does not necessarily follow that when one man

admittedly becomes "emotionally involved" in his efforts to help another, their relationship is "unnatural" in the sense suggested by appellants. Some of the worst crimes committed by mankind have been the result of an abnormal excess of misguided loyalty, friendship or altruism.

Lastly, we must reject appellants' contention that reversals are required by the recent decision in *People* v. *Dorado, supra,* 62 Cal.2d 338. In that case the court stated at page 353: "We conclude, then, that defendant's confession could not properly be introduced into evidence because (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights."

In the instant case, the record discloses that an investigation of appellants' pharmaceutical practices was commenced on July 7, 1960. The investigation was conducted in accordance with the normal practices of the California Bureau of Narcotic Enforcement. The officers of the bureau examined into the prescriptions on file with the pharmacy (Cf. Bus. & Prof. Code, § 4331) and asked appellants certain cursory questions in regard thereto. On July 7, 1960, appellant Katz told the officers that every patient received the kind and amount of substance called for by his subscription, gave the dates on which certain prescriptions were filled and said that they had been authorized by a doctor. Thereafter, the officers began contacting a number of doctors and nurses connected with this case and obtained statements from them. On July 28, 1960, both appellants were questioned further regarding certain of the prescriptions with particular reference to the statements of the doctors and nurses concerning their lack of authorization therefor.

It is immediately apparent that at least two of the four prerequisites set forth in the above quoted language of the *Dorado* decision were not here present. First, appellants were not in custody, and, secondly, the interrogation appears still to have been a proper step in the investigation into an unsolved crime. A grand jury indictment was not returned until October 18, 1960, i.e., almost three months later. As stated in *Dorado,* at page 354:

"Nothing that we have said, of course, should be interpreted to restrict law enforcement officers during the investigatory stage from securing information from one who is later accused of the crime or from obtaining answers to their questions. ██ Indeed, any statements obtained without coercion, including, of course, the unsolicited, spontaneous confession, given in the absence of the requirements for the accusatory stage, may be admitted into evidence. ██ As the concurring opinion of Justice Traynor in *People* v. *Garner* (1961) 57 Cal.2d 135, 164 [18 Cal.Rptr. 40, 367 P.2d 680], states: 'So long as the methods used comply with due process standards, it is in the public interest for the police to encourage confessions and admissions during interrogation.'

██ "Only when the investigatory stage has become an accusatory one, that is, when it has begun to focus on a particular suspect, the suspect has been taken into police custody, and the police have carried out a process of interrogations that lends itself to eliciting incriminating statements, does the doctrine of *Escobedo* apply and the confession given without the required warning or other clear evidence of waiver become inadmissible evidence. Moreover, an important consideration in determining whether the accusatory stage had thus been reached must be a careful concern that there be no interference with the legitimate police investigation of an unsolved crime." (Also see *People* v. *Stewart,* 62 Cal.2d 571, 577-578 [43 Cal.Rptr. 201, 400 P.2d 97].)

It is to be noted, of course, that this particular phraseology of the *Dorado* decision was being applied to the type of case wherein there was no question whatsoever *that a crime had been committed* and the investigatory procedures in question had been directed solely to the purpose of *finding the perpetrator thereof.* ██ In cases such as the present, however, the investigation usually is not directed to the problem of *identifying the guilty parties,* if any, but rather to determining *whether, in fact, any crime has been committed.* That is to say, the moment the officers of the narcotics bureau make even the most routine inspection of a pharmacy, they know that if any crime should be revealed by the records thereof, it almost necessarily will have been committed by some known person or persons. To attempt to apply the *Dorado* rule to preliminary questioning by state officers of licensees during an investigation of their operations would interfere very seriously with legitimate control thereof. This could only result in injury to the general public and would operate to defeat the

legislative intent manifested by the enactment of these specific licensing and investigatory standards and procedures.

Finally, even if *Dorado* properly could be applied in the instant factual setting, reversals would not be indicated. This is true because no statements taken from appellants could possibly be construed as confessions. In essence, they amount to nothing more nor less than protestations of innocence based upon a claim of honest error or mere negligence. These statements were entirely consistent with the theory of the defense which two juries rejected as unworthy of credit and too weak to raise even a reasonable doubt. (*People* v. *Hillery*, 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382].)

The judgments are affirmed.

Roth, P. J., and Fleming, J., concurred.

The petitions for a rehearing were denied June 2, 1965, and appellants' petitions for a hearing by the Supreme Court were denied July 14, 1965. Mosk, J., did not participate therein.