[Crim. No. 27242. Second Dist., Div. Two. Mar. 25, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS ORABUENA, JR., Defendant and Appellant.

**COUNSEL**

Jeffrey Adrian Villagran, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, James H. Kline and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROTH, P. J.**—Jesus Orabuena, Jr., appellant, was charged with and found guilty by a jury of one count of murder (Pen. Code, § 187), three counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)), and with use of a firearm in the commission of each of the felonies charged (Pen. Code, § 12022.5). He appeals from a judgment entered on the jury's verdict.

On September 7, 1974, at about 1:30 a.m., appellant, his brother, and companions armed with .22 caliber semi-automatic rifles were passengers in a car driven by a juvenile in the Eubank and L Streets area in the City

of Wilmington. The car turned right from Eubank onto L Street and proceeded three blocks westerly on L Street where it was joined by another automobile. The car in which appellant was riding turned, reversed its course, and proceeded east on L Street toward the corner of Eubank and L where approximately 25 persons were gathered. The other auto followed.

When appellant's car was about a block away from the corner of L and Eubank, it decelerated to between 5 and 10 miles per hour. Appellant and his brother stuck rifles out of the windows of their car and commenced firing at the group on the corner and continued to fire until their car reached Eubank Street at which point appellant's car and the one following made a left turn onto Eubank and proceeded north.

During the fusilade appellant and his brother had discharged approximately 30 shots at the group on the corner. One victim standing behind a hedge was struck in the head and killed; another had been wounded in the right leg and in the area between the right eye and ear; a third had been shot in the foot; and a fourth had been shot in the side.

Two separate witnesses identified appellant as being one of the persons who had fired the rifles.

█ In defense appellant testified he had been at a party removed from the scene of the shooting. Three separate witnesses supported his alibi. The prosecution then moved for a continuance to permit time to produce the driver of the car in which appellant was riding. The driver, a minor, was facing a murder charge in the juvenile court. The People granted the minor immunity and he testified, over defense objections, that he drove the car appellant was in and that appellant was one of the occupants of the car who fired the rifles.

Appellant relying on *People* v. *Carter* (1957) 48 Cal.2d 737 [312 P.2d 665], and *People* v. *Rodriguez* (1943) 58 Cal.App.2d 415 [136 P.2d 626], asserts that the above evidence was improper rebuttal and that it was prejudicial error for the court to have allowed its introduction.

Numerous cases condemn the practice of using evidence in rebuttal that should be properly used as part of the case in chief. (See *People* v. *Golden* (1961) 55 Cal.2d 358, 371 [11 Cal.Rptr. 80, 359 P.2d 448]; *People* v. *Katz* (1962) 207 Cal.App.2d 739 [24 Cal.Rptr. 644].) However, it is also established that when a defendant presents an alibi defense, the

prosecution may introduce evidence that rebuts it even though that evidence could have been introduced as part of the case in chief. (See, e.g., *People* v. *Jeffrey* (1965) 233 Cal.App.2d 279 [43 Cal.Rptr. 524].) It is clear from the record that until the defense introduced evidence of an alibi that the prosecutor did not know what the defense would be. In such circumstances the prosecutor is not required to rely upon the evidence introduced in People's case in chief. Any prosecutor exercising ordinary care and caution would feel impelled to produce available evidence permitted by law.

The court in *People* v. *Pike* (1962) 58 Cal.2d 70, at page 92 [22 Cal.Rptr. 664, 372 P.2d 656] states: "The deputy district attorney was not bound to accept . . . self-serving and exculpatory assertions at their face value but could properly introduce the subject evidence for the specific purpose of impeachment. [Citations.] This being so, it is immaterial that the impeaching evidence also tended—as by its nature such evidence often does—to support the People's case in chief . . . ."

Appellant next asserts that the trial court's denial of his request to wear civilian clothes in the courtroom on one of the trial days equates with a denial of due process. Such a request is normally granted. However, the record shows that the prospective jurors were voir dired on February 13 and 14, 1975. On February 18, 1975, out of the presence of the prospective jurors, appellant's counsel called the court's attention to the fact that appellant was dressed in "jail blues" and made a request that civilian clothes which had been brought to the courtroom be made available to appellant. Counsel stated that he had not been able to deliver the civilian clothes to appellant because of jail rules. Appellant's request was denied. The court noted that it would check with the jail and arrange for appellant to receive the clothes. Nothing in the record indicates further objections or complaints or a repeat of the original incident. In *People* v. *Garcia* (1954) 124 Cal.App.2d 822 [269 P.2d 673], Garcia objected to being tried in prison garb. The court ordered that Garcia should be thereafter dressed in civilian clothes. The *Garcia* court found no prejudicial error. We find none.

Appellant also argues that there was no showing of an intent to kill[1] and that as a matter of law he cannot be convicted of murder in the first

---

[1]Appellant implicitly concedes that if the fatal shot was fired by his brother, the other passenger, he would be equally guilty. (See Pen. Code, § 31.) We therefore do not discuss where the victims were or on which side of the car the brothers were when the firing was going on.

degree. The facts show that earlier in the evening a car was driven past the corner of Eubank and L Streets; someone in the car threw a bottle out of the vehicle and concurrently yelled "Harbor City." The same car later returned and the brothers fired at everyone congregated on the corner. If substantial evidence supports the verdict of the jury, this court must follow the judgment entered thereon. We do not reweigh the evidence. (*People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].)

■ Appellant argues specifically that since he did not know that the deceased was behind the hedge, he could not have committed a "willful, deliberate and premeditated killing." (Pen. Code, § 189.) The words "deliberate" and "premeditated" are not words of art, but are to be construed in their ordinary dictionary meaning. (*People* v. *Bender* (1945) 27 Cal.2d 164, 183 [163 P.2d 8]; *People* v. *Holt* (1944) 25 Cal.2d 59, 87 [153 P.2d 21].)

■ When a murder occurs during an attack upon a group, a defendant's intent to kill need not be directed at any one individual, it is enough if the premeditation is directed at the group. (*People* v. *Smith* (1973) 33 Cal.App.3d 51, 66 [108 Cal.Rptr. 698]; *People* v. *Stein* (1913) 23 Cal.App. 108, 114-115 [137 P. 271]; see also *People* v. *Sutic* (1953) 41 Cal.2d 483, 491-492 [261 P.2d 241].)

The jury implicitly found and substantial evidence supports the finding that the murder at bench was committed with deliberation and premeditation.

In *People* v. *Anderson* (1968) 70 Cal.2d 15, the court says at pages 26-27 [73 Cal.Rptr. 550, 447 P.2d 942]:

"The type of evidence which this court has found sufficient to sustain a finding of premeditation and deliberation falls into three basic categories: (1) facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing—what may be characterized as 'planning' activity; (2) facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a 'motive' to kill the victim, which inference of motive, together with facts of type (1) or (3), would in turn support an inference that the killing was the result of 'a pre-existing reflection' and 'careful thought and weighing of considerations' rather than 'mere unconsidered

or rash impulse hastily executed' (*People* v. *Thomas,* . . . 25 Cal.2d 880, at pp. 898, 900, 901 [156 P.2d 7]); (3) facts about the nature of the killing from which the jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a 'preconceived design' to take his victim's life in a particular way for a 'reason' which the jury can reasonably infer from facts of type (1) or (2)."

■ The evidence presented showed strong type (1) evidence. In addition there was type (2) evidence. The type (1) evidence showed that appellant and his friends had armed themselves with rifles prior to driving to Wilmington. Arriving in Wilmington, they "cased" the corner of Eubank and L, observed people congregated; drove down L Street three blocks; were joined by another car; made a U-turn, stopped, and one of the persons in the car was heard to say, "They are down at the corner. Let's go and get them." The car in which appellant and his brother were riding then proceeded down L Street with its lights out and slowed its speed before the firing commenced. These activities *prior* to the shooting were inextricably interwoven with and were a planned part of the killing and the additional felonies that inevitably ensued. The type (2) evidence showed that there was "bad blood" between appellant and some of the people who lived in the area of Eubank and L Streets. One of the victims testified that appellant had shot at him about two weeks prior to the incident at bench. The evidence outlined above along with other evidence established that the incident at bench was the result of a gang feud and that the killing was the result of deliberation and premeditation. The fact that appellant and/or his brother meant to kill one or more of the persons assembled on the corner and not a particular person does not per se eliminate the existence of the necessary element of deliberation and premeditation. Appellant's deliberation and premeditation when he fired his rifle were directed toward the group at the corner of Eubank and L. The resulting death of one of the group was first degree murder. (Pen. Code, § 189; *People* v. *Smith, supra,* 33 Cal.App.3d 51.)

The judgment is affirmed.

Compton, J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 19, 1976.