## STATE v. SCOTT et al.

No. 6552.   Decided August 20, 1943.   (140 P. 2d 929.)

*J. Rulon Morgan,* of Provo, and *Elias Hansen,* of Salt Lake City, for appellants.

*Grover A. Giles,* Atty. Gen., *Herbert F. Smart,* Deputy Atty. Gen., and *William Stanley Dunford,* Dist. Atty., of Provo, for respndent.

McDONOUGH, Justice.

The defendants G. H. Wilson and Robert Scott were convicted in the district court of making, drawing, uttering and delivering a check in the amount of $35 with intent to

defraud Edith Burk, knowing at the time that Wilson did not have sufficient funds in or credit with the bank for payment of the check upon presentation thereof. The check is dated August 29, 1941, made by defendant Wilson and drawn on the Farmers' & Merchants' Bank, payable to the defendant Scott. In the lower left corner appears the notation, "Labor for tomatoes." Scott presented the check to Edith Burk who cashed it on Friday evening, August 29, 1941. The next day Wilson went to the place of business of Mrs. Burk, where he met her husband who was attending the place, and Wilson then and there informed Mr. Burk there were not sufficient funds in the bank to pay the check. Wilson then paid him the $35 in cash and received a receipt therefor, and was promised the check would be returned to him.

The defendants were prosecuted under 103-18-11, R. S. U. 1933, as amended by Chap. 29, Laws of Utah 1941, Second Special Session, (now 103-18-11, U. C. A. 1943). Under the provisions of said statute so amended, defendant Wilson was sentenced to nine months in the county jail, and defendant Scott was sentenced to a term of "not to exceed fourteen years" in the state prison. Both defendants appeal.

The amended statute, 103-18-11, U. C. A. 1943, makes the offense therein described "punishable by imprisonment in the county jail for not more than one year, or in the state prison for not more than 14 years." 103-1-13 defines a felony as "a crime which is or may be punishable with death, or by imprisonment in the state prison." Thus the offense described in 103-18-11, as amended, is a felony, because it is punishable by imprisonment in the state prison, even if such punishment is not inflicted by the court. Accordingly, a complaint was first filed in the city court, and defendants were bound over to stand trial in the district court where the district attorney filed an information on which defendants were tried and convicted.

By one of their assignments of error, defendants contend that Chap. 29, Second Special Session Laws of Utah 1941,

is null and void because not constitutionally enacted, in that it was adopted in contravention of Article VII, Section 6, of the Constitution of Utah. Appellants allege said legislation was unconstitutional in its enactment for the reason that the Governor did not call to the attention of the Legislature the subject matter of said chapter. If said Chap. 29 is invalid, the prior law has not been repealed or modified, and the district court was not authorized by law to try the case in the first instance because the acts charged would amount to only a simple misdemeanor. *State* v. *Florence,* 79 Utah 200, 8 P. 2d 621; *State* v. *Ferguson,* 83 Utah 357, 28 P. 2d 175.

Article VII, Section 6, Constitution of Utah, provides:

"On extraordinary occasions, the Governor may convene the Legislature by proclamation, in which shall be stated the purpose for which the Legislature is to be convened, and *it shall transact no legislative business except that for which it was especially convened, or such other legislative business as the Governor may call to its attention while in session.* \* \* \*" (Italics added.)

The Governor's proclamation calling the special session of the Legislature in question made no mention of the legislative subject matter contained in Chap. 29, Second Special Session Laws of Utah 1941; nor is there any other official record that the Governor ever called such business or subject matter to the attention of the Legislature while it was in special session. The only evidence of any communication to either house of said Legislature consists of an affidavit of the Governor received in evidence at the trial of this cause, wherein he stated that

"communications were had orally between members of the Senate of said Legislature and him, wherein he, as Governor of the State of Utah, authorized the consideration of said proposed legislation by said Special Session,"

and the fact that he signed the bill after the session had ended. There is no claim that the Governor even had any

oral communication with any members of the House of Representatives.

Did such oral communications between the Governor and individual members of the Senate constitute calling such legislative business to the attention of the legislature? In *State* v. *Tweed*, 63 Utah 176, 244 P. 443, 446, this court discussed the requirements of the Constitution in this regard. In that case the Governor did not mention the questioned legislative business in his proclamation calling the special session, but after the special session convened each house appointed a committee to determine the legislative business to be considered in that session and to bring the recommendations of the Governor before the Legislature in appropriate form for its consideration. The two committees held a joint meeting in which the Attorney General and the secretary to the Governor "laid before the committee certain bills which had been prepared by the Attorney General, or in the Governor's office in line with his recommendations touching the subjects embraced in his message to the Legislature." One of the bills laid before the two committees at said joint meeting was later enacted into the statute in question in that case. These facts appeared from the record kept by the Legislature, in a report made by the Senate committee.

In that case this court said:

"That the means that the Governor shall employ or the method he shall use to inform the Legislature what 'legislative business' shall be considered by it in addition to that stated in the proclamation are not defined in the Constitution. * * * the Governor is made * * * the sole judge of * * * how any additional matters to be considered by it shall be called 'to its attention.' Moreover, the constitutional provision is intended to leave the matter of special sessions of the Legislature in the Governor's hands to the end that he may have complete control * * * over the 'legislative business' that shall be considered by it. If such were not the case the Legislature might unduly prolong the special session to the detriment of the taxpayers."

This court held that the legislative business in question was sufficiently called to the attention of the Legislature in that case to meet the constitutional requirements.

The Tweed case, however, is distinguishable from the case at bar. In that case, the Governor, acting through his secretary and the Attorney General, met with the two committees, one appointed by each house, for the purpose of receiving from the Governor bills which he proposed to be enacted in that session. There was handed to those committees a bill covering the legislative business in question. The Senate committee by its report to the Senate, made a public record of those happenings. This court assumed in its decisions without discussion, that the Attorney General and the Governor's secretary, were authorized by the Governor to do what they did, and held that it was sufficient for him to act through them. It also held that his communication did not have to be made directly to both branches of the Legislature, but it could be made through the two committees appointed for such purpose.

In the case now before us there was no public record of any kind as to what happened between the Governor and the Legislature. There was no written record of any kind, only oral communications between the Governor and some members of the Senate. There is no showing that the Senators were appointed by the Senate to receive the oral communications from the Governor, and certainly no evidence that they had any authority to act on behalf of the House of Representatives; nor is there any showing that these members of the Senate were authorized by the Governor to act in his behalf in calling this legislative business to the attention of either branch of the Legislature. There is no record that these Senators who discussed the matter with the Governor ever did on behalf of the Governor inform either house that the Governor had authorized consideration of the business in question. Certainly, a matter would have to be called to the attention of both the Senate and the House of Representatives to meet the constitutional mandate.

The Constitution, Art. I, Sec. 26, declares: ■

"The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

The provision under discussion is mandatory, and unless complied with the questioned enactment is void. The public is interested in the business transacted by the Legislature, and it is entitled to be informed of the matters of business to be transacted that persons affected may protect their rights and interests. It therefore is important to have a public record of the legislative business which the Governor calls to the attention of the Legislature in special session.

The constitutions of many other states contain provisions restricting the action of special sessions to those matters presented by the Governor, and a number of courts have held that legislation enacted without compliance with constitutional provision or contrary to such constitutional requirement is void. *Smith* v. *Curran*, 268 Mich. 336, 256 N. W. 453; *Wells* v. *Missouri Pac. R. Co.*, 110 Mo. 286, 19 S. W. 530, 15 L. R. A. 847; *State ex rel. Rice* v. *Edwards*, Mo., 241 S. W. 945; Ex parte Seward, 299 Mo. 385, 253 S. W. 356, 31 A. L. R. 665; *Lauck* v. *Reis*, 310 Mo. 184, 274 S. W. 827; *State* v. *Adams*, 323 Mo. 510, 19 S. W. 2d 671; *State* v. *Key*, 121 Okl. 64, 247 P. 656; *Commonwealth* v. *Liveright*, 308 Pa. 35, 161 A. 697, 703; *Jones et al., Road Com'rs,* v. *State*, 154 Ark. 288, 242 S. W. 377; *McClintock* v. *City of Phoenix*, 24 Ariz. 155, 207 P. 611; and *State ex rel. Woollen*, 128 Tenn. 456, 161 S. W. 1006.

87-3-2, U. C. A. 1943, provides that in addition to the duties prescribed by the Constitution, the Secretary of State shall "keep a register of, and attest, the official acts of the governor." Under such provision it would appear not unreasonable to hold that to determine ██ what are official acts of the Governor, such register might be relied upon exclusively. However, at this time we are not called upon to overrule the Tweed case in its holding that there was a sufficient compliance with the constitutional

mandate in that case. Nevertheless, we hold that in order to establish the fact that the Governor called certain legislative business to the attention of the Legislature while in special session, there must·be something more than is shown in this case—a mere oral communication to certain Senators whereby the Governor said that he authorized consideration of said legislation. Although not required to be in writing as provided by the constitutions of some other states, the legislative business must be called to the attention of the *Legislature,* not to a few individual members of either the Senate or the House. While the constitution does not prescribe any particular formality, the method of communication must be such as will reach both houses and an appropriate record made thereof.

So concluding, it follows that the attempt to enact Chap-29, Laws of Utah, 1941, Second Special Session, was of no effect; and that the statute known as 103-18-11, R. S. U. 1933, remains unamended. It therefore is not necessary to discuss the alleged denial of due process of law under the invalid amendment, which counsel for appellants so strenuously argues in the briefs.

Owing to the fact that this case must be remanded and there may be another trial in the city court where the case originated, we believe it would be well to consider the assignment of error concerning Instruction No. 6. By such instruction the court told the jury that payment of the amount of the check could not be considered as a defense. Technically such instruction was correct, but as given it was susceptible of being misunderstood by the jury. The jury might very well not have understood the difference between a "defense" and proof which tends to show no offense was committed, and without further explanation they might have assumed that they could not consider the fact of payment or reimbursement for any purpose. If at the time the check was issued the defendants had the necessary intention to defraud, knowing there were not sufficient funds in the bank or credit with the bank for

payment when presented, the subsequent payment of the amount thereof would not be a defense to prosecution; but the fact that the check was paid within a day after delivery might tend to prove that they had no knowledge that the funds were insufficient for payment and that there was no intention to defraud entertained by them at the time of issuance or negotiation of the instrument. The giving of such instruction without further explanation, therefore was error.

The judgment is reversed, and the cause is remanded to the district court with directions to quash the information and to remand the case to the city court for such proceedings as are consistent with this opinion.

WOLFE, C. J., LARSON and MOFFAT, JJ., and CLARENCE E. BAKER, District Judge, concur.

PRATT, J., on leave of absence.