[Crim. No. 5896.   Second Dist., Div. Three.   Nov. 27, 1957.]

THE PEOPLE, Respondent, v. ROGER S. VALDES, Appellant.

David C. Marcus for Appellant.

Edmund G. Brown, Attorney General, and Bonnie Lee Hansen, Deputy Attorney General, for Respondent.

SHINN, P. J.—Roger S. Valdes was accused of an offense of grand theft and two offenses of forgery. The transaction involved in the charge of grand theft concerned the sale of a residence by Valdes to one Giron in which Valdes was accused of the theft of $900; the second concerned the endorsement of the name of Delia P. Miranda upon a check payable to her, and the third count accused Valdes of forging the name of Ralph V. Garcia by endorsement upon a check for $150 payable to Garcia. In a nonjury trial Valdes was acquitted upon Counts I and II and convicted on Count III of forging the name of Garcia. He was sentenced, execution of sentence was suspended, he was fined $500, placed on probation and he appeals from the judgment and from an order denying his motion for a new trial.

The evidence relating to the Garcia transaction was the following: In the eastern part of Los Angeles, on First Street, was a storeroom in which were four private offices. Valdes used one of these and a man named Salot used another. This was the headquarters of the Owl Mortgage Company which was a fictitious name, and nothing more. Salot was a realtor who traded in real estate and loaned money. Valdes had been a broker but had "inactivated" his license. He accepted applications for loans made to Owl Mortgage, prepared papers, traded in real estate, acted as escrow holder and handled the detail work. There seems to be no definite ownership of the Owl Mortgage Company, although Valdes and Salot made use of the name; when an application for a loan was received it went to Salot, and if he approved it he

made the loan and received the security. A man named Macias, who ran a television store, brought Garcia to Valdes seeking a loan of $150 with which Garcia intended to buy a television set. Garcia offered to give a second trust deed upon his half interest in property as security. Salot approved the loan, Garcia executed a note and trust deed in favor of Salot for the amount of $260, a title search was made and the trust deed was recorded. The difference between the amount of the loan and the amount of the note represented vaguely described expenses. Salot issued his check for $150 payable to Garcia and gave it to Valdes, who signed the name of Garcia and his own name as endorsers, and cashed the check. This act was the basis of the charge of forgery.

The crucial questions were whether Valdes knew he was acting without authority and whether the endorsement and cashing of the check were done for the purpose of defrauding Garcia, Salot, or the bank.

If forgery was committed it was by violation of that portion of section 470, Penal Code, reading: ''Every person who, with intent to defraud, signs the name of another person, or of a fictitious person, knowing that he has no authority so to do . . . is guilty of forgery.''

The appeal presents only the question of the sufficiency of the evidence. It calls for no dissertation on the law of forgery but only the consideration of facts which, as we shall see, are unique. ■ ''Normally an intent to defraud may be, and often must be inferred from the circumstances in which a false instrument is executed or issued. (*People* v. *Horowitz*, 70 Cal.App.2d 675, 687 [161 P.2d 833] ; *People* v. *Adair*, 3 Cal. App.2d 323 [39 P.2d 274].)'' (*People* v. *Crowder*, 126 Cal. App.2d 578, 585 [272 P.2d 775].) This is the rule upon which the attorney general relies for affirmance of the judgment. The substance of his contention is that Garcia testified that he did not give Valdes permission to endorse the check and that a fraudulent intent must be inferred from the unauthorized signing of Garcia's name. The contention is entirely too broad. Each case rests upon its own facts. Because of its unique facts the present case stands apart.

■ There can be no forgery unless the evidence justifies reasonable conclusions that the signer had knowledge of his lack of authority and intended to commit a fraud.

■ We have concluded that the evidence was legally insufficient to prove the offense of forgery. It will clearly appear from our discussion of the evidence, when it is given

interpretation and effect most favorable to the People, that it furnished no basis for an inference that Valdes knew he was acting without authority or an inference that he acted with fraudulent intent.

The testimony of Garcia given at the preliminary was used by the People at the trial, under stipulation. He testified that his only purpose in borrowing the money was to purchase the television set from Macias; that he knew the money would come to Valdes in the form of a check and he told Valdes to do whatever was necessary in order to pay Macias the $150 being borrowed from Salot. Valdes went to Macias after he had cashed the check, intending to pay him the money, and was informed that the television set had been sent to Garcia's home and that Garcia had refused to accept it. Garcia testified that he notified Valdes that he had had a disagreement with Macias and did not propose to acquire the television set, and that Valdes had already cashed the check. Valdes testified that he offered to give the money to Garcia but that Garcia declined it and asked that he be given back his trust deed. Garcia's testimony was to the same effect, namely, that he did not want to go through with the deal, asked for the return of his trust deed and he testified "I didn't want no money from him at all." Valdes testified that he found himself "in the middle," which is a fair description of his position. He told Garcia he would pay the money to him or to Salot, but Garcia did not want the money, nor did Salot, who then held the note and the recorded deed of trust. At this point Salot sold Garcia a residence. There was testimony that in this transaction Garcia paid off his trust deed of $260 and also that he was given credit for $150. The testimony concerning this transaction was hazy and we attach no importance to it. Valdes was not relieved of his responsibility to pay over the money to or for the benefit of Garcia. He did not do this. Several weeks later he voluntarily went to Garcia, told him that he had spent the money for groceries, and that he was sorry. He commenced to pay Garcia at the rate of $25 per month and paid him altogether $75. Garcia testified that Valdes paid him money but he did not state the amount. Undoubtedly Valdes had used the money for purposes of his own. We may disregard his testimony that he had Garcia's permission to use it. Valdes testified that he had been a licensed realtor, but has "inactivated" his license; that thereafter he took from each of his customers a power of attorney, that Garcia had executed a power of attorney in

his favor and that it was with the files of the defunct Owl Mortgage Company, which were not in his possession. Garcia denied having executed a power of attorney, but there was independent evidence that Valdes did hold powers of attorney from other customers. The fact that it was customary for Valdes to act in an attorney-in-fact capacity was relevant to the question whether he possessed or believed he possessed authority to cash the check. We mention the manner in which Valdes was accustomed to act for his customers merely as a circumstance to be taken into account. It was not necessary for him to prove that he held a power of attorney. It would have added nothing to the authority clearly implied in the oral instructions he had received from Garcia. The following facts were established without dispute: Garcia borrowed the money for the sole purpose of paying it to Macias for the television set; he knew the money would come by check to Valdes; he told Valdes to do whatever was necessary in order to pay Macias the $150; he decided he did not want the set and refused to accept it from Macias; he so informed Valdes, and declined to accept the money, but asked for the return of his security and release from the transaction. When Valdes cashed the check Macias was expecting the money, Garcia was expecting to receive the television set, and Salot, a business associate of Valdes, was expecting Valdes to pay to Macias the money that had been loaned on the trust deed. These, we say, were the admitted facts, and we find in them no basis whatever for a belief that when Valdes cashed the check he intended to steal the money. Garcia testified that he did not give Valdes permission to endorse the check, but he also testified, as previously stated, that he authorized and expected him to pay the money to Macias and to do whatever was necessary for that purpose. He was not surprised nor did he protest when he learned that Valdes had cashed the check. That Valdes knew, after being instructed as he was, that he had no authority to cash the check is incredible. That with three men looking on, waiting and watching, he intended to steal the money and incur their wrath is contrary to reason. It was unfortunate that Valdes was carrying around money which neither Garcia nor Salot was willing to receive, and more unfortunate that, some weeks later, he gave in to the temptation to spend it, as he told Garcia, for groceries. But from this wrongful act of misappropriation, alone, a deduction could not reasonably be drawn that the check was cashed

with the fraudulent intent of stealing the money. The record discloses a conviction of forgery upon evidence of the commission of no more than petty theft.

The judgment and order denying motion for new trial are reversed with instructions to the court to dismiss the action.

Wood (Parker), J., and Vallée, J., concurred.