[Crim. No. 6981. Second Dist., Div. One. July 7, 1960.]

THE PEOPLE, Respondent, v. FLORENCE McAFFERY, Appellant.

Hertzberg, Hoffman & Geretz and Victor O. Geretz for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney, Harry Wood and Harry B. Sondheim, Deputy District Attorneys, for Respondent.

LILLIE, J.—Defendant was charged with three counts of forgery of endorsement (Pen. Code, § 470) and one count of grand theft (Pen. Code, § 487.1). In a nonjury trial she was adjudged guilty of all four offenses. This appeal is from the order denying a new trial and from the judgment of conviction which, in the present state of the record, we construe to be from the order granting probation (*People* v. *Reed,* 128 Cal.App.2d 499, 502 [275 P.2d 633]).

During the years 1957 and 1958 defendant was employed by Leslie C. Grant, a Pasadena physician, as an office nurse and secretary. Prior to June 20, 1958, a Mrs. Gallagher was treated by Dr. Grant; in part payment of her account she mailed his office a money order for $200 which she had purchased from a Los Angeles branch of the Bank of America. On or about May 19, 1958, Mrs. Gallagher paid an additional $275, this time in cash, which she gave to the defendant and from whom she received a receipt, dated May 19, 1958, signed by defendant on Dr. Grant's printed office stationery (Exhibit 2). This form of receipt was given only to insurance companies requesting a complete itemization of services rendered; otherwise, the patient received a receipt from a book provided for that purpose, the originals of which (six to each sheet and numbered) were perforated and torn out individually, the

carbon or copy in each case being retained for office records. The money order mailed by Mrs. Gallagher was payable to Dr. Grant's order. On June 23, 1958, it was cashed by defendant at a Pasadena bank where Dr. Grant did not have an account; he had not previously given defendant (or anyone else) authority to endorse his name thereon, nor did he know of the instrument's existence until after defendant had left his employ. Eventually the paying bank reimbursed him in full, although no restitution of any kind was made by defendant.

Count II pertained to the forgery of a draft issued by Equitable Life Assurance Society for $100 and payable to Dr. Grant for services rendered an employee of Fluor Corporation, Ltd., insured by Equitable. As in the case of the previous transaction, Dr. Grant did not in fact endorse the instrument, nor was anyone given authority to do so; he never received the money represented by the check or draft and he knew nothing of its existence until after its encashment.

Count III involved a check for $125 to Dr. Grant's order and drawn by Aetna Life Insurance Company under a group policy with Avon Company for services rendered Ruth Lile, Avon's employee. It likewise bore Dr. Grant's purported endorsement and was cashed by defendant at a Pasadena bank. No one had authority to endorse the check for Dr. Grant and he knew nothing about the transaction until after the check had been cashed; nor did the defendant give him any of the proceeds therefrom.

Over objection, proof of the cashing of other checks (Exhibits 8 and 9) by defendant under the same circumstances was permitted. Don E. Mire, a qualified expert in the handwriting field, testified that the signatures of "Dr. Grant" and "Florence McAffery," appearing on these and the other instruments in question, were those of the person who filled out a handwriting exemplar card containing numerous samples of defendant's handwriting (Exhibit 10).

Defendant, at the trial, testified that she never endorsed and cashed a check for Dr. Grant without his express direction to do so; with such explanation she admitted cashing all five checks heretofore mentioned, and this was done, according to her best recollection, at the same time; she further stated that the proceeds of all checks were given to Dr. Grant.

Brought into focus by this line of testimony was the manner in which Dr. Grant conducted his practice, from a busi-

ness standpoint, as to which he had testified during the prosecution's case in chief. According to his testimony the defendant was instructed to open mail from patients to whom bills had been sent (a special billing form made them readily identifiable) and thereafter enter such payments in a cash book (Exhibit 6) regardless of whether the payment was by cash or check; she also was to make the proper entry on the patient's ledger card. Defendant retained custody of all payments (cash or check) until she brought the cash book to Dr. Grant; the latter then removed the checks and such cash as he wished, making the proper notation to keep a running balance (the amount remaining in cash) and then deposited the checks at the bank. While Dr. Grant's receipt book (Exhibit 3) showed a payment of $75 from Mrs. Gallagher on May 19, although the latter had no recollection of such a payment in addition to that of $275 made the same day, there is this entry in the cash book (Exhibit 6): "5/19 Gallagher, Lorraine (cash on acct.) 175.00." There was testimony from the People's expert witness, Mr. Mire, that originally the number "75.00" was written by the defendant, and subsequently the figure "1" (raising the total to "175.00") was added by her; also, according to the same witness, other alterations were made by the defendant to secure a balance for that day which would correspond with the changes she had effected in the cash book.

After both sides had rested, the trial court's reaction to the facts thus developed was as follows: "I think, in this case, that it is pretty evident here, from the defendant's own testimony, that she hasn't told the truth so far as the Gallagher transaction is concerned. . . . She said that she wrote the $175 item as the Doctor had requested her to do it; that she never changed the '75' to '175'; that Dr. Grant had told her how to write the receipt; that Dr. Grant got all the money, all of the $275; that the entries in Exhibit 6, that is, the cash book, were by direction of Dr. Grant; that they had words about the $75 receipt and he said, 'Never mind, I am your boss and you will do as I say.' . . . Today she testified that she never wrote the $175 in the account, but she wrote only the $75 in the account. Well, that certainly is unexplainable." Defendant does not challenge the sufficiency of the evidence to support the finding that she committed all four offenses charged, and indeed no other conclusion would seem reasonable under the record now before us—for example—as the trial court additionally observed, "(t)here is just no ex-

planation here of why, in a series of five different checks or more, two different inks were used'' whereby defendant ''endeavored to show, by using one colored ink for one signature and one for the other, that they were made by different people at different times.'' Reversal, however is sought on the following grounds: (1) Exhibits 2, 3 and 6, and evidence relating thereto, were irrelevant and immaterial to the charges pending, and the admission of such evidence constituted reversible error; (2) evidence of other forgeries, not charged in the information, was erroneously received. Neither of the foregoing contentions is sustainable.

It is settled in this state that evidence is admissible (except where it shows mere criminal disposition) which tends logically and by reasonable inference to establish any fact material for the prosecution, or to overcome any material fact sought to be proved by the defense, even though it may connect the accused with an offense not included in the charge (*People* v. *McCaughan,* 49 Cal.2d 409, 421 [317 P.2d 974]); accordingly, where an accused has pleaded not guilty and thus put in issue all facts relating to the commission of the offenses, evidence of a prior or collateral criminal act is relevant to prove a specific and ascertainable feature of the crime on which the prosecution is based, such as lack of mistake, motive or intent (*People* v. *Wade,* 53 Cal.2d 322 [1 Cal. Rptr. 683, 348 P.2d 116]). In the present matter, the defendant consistently denied any intent to cheat and defraud her employer, either by forgery of endorsement or embezzlement, of monies paid into his office by Mrs. Gallagher; she also contended that she gave Dr. Grant the funds received from the checks and the money order. Evidence that on other occasions she had received cash from a patient of Dr. Grant, a portion of which was not given to the latter, tended to show that she signed his name on the checks without any intention of giving the money received in exchange therefor to Dr. Grant. Additionally, defendant's execution of a receipt for only $75 (Exhibit 3) when, in fact, $275 had been paid by the patient, her unauthorized use of Dr. Grant's printed office receipt (Exhibit 2), and her subsequent ''doctoring'' of the cash book (Exhibit 6) demonstrated, singly and collectively, that such transactions were part and parcel of a scheme to defraud her employer by the concealment of collateral criminal acts, committed or contemplated, and the conversion to her own use of monies realized thereby. '' 'Where several crimes are connected as part of one

scheme or plan, all of the same general character, and tending to the same common end, they may be given in evidence to show the process or motive and design leading up to the particular crime for which the prisoner is being tried, and thus directly tending to show logically that the crime in question was a part of such common scheme. ▮ If the general crimes are part of a chain of cause and in consequence so linked as to be necessarily connected with the system or general plan, they are admissible.'" (*People* v. *Daniels,* 85 Cal.App.2d 182, 191 [192 P.2d 788].) ▮ Defendant states that "there was no evidence at the Preliminary Hearing dealing with the Gallagher cash transaction" (and that) "(t)he only evidence produced at the Preliminary Hearing concerned the three negotiable instruments involved in Counts I, II and III." This argument is also untenable; no transcript of the preliminary examination is before us, and in the absence thereof we must indulge all presumptions in favor of the judgment (*People* v. *Walker,* 170 Cal.App.2d 159, 163 [338 P.2d 536]); furthermore, defendant's conviction rests upon the evidence adduced at the trial and the judgment rendered, not upon the proceedings had before the magistrate (*People* v. *Ahern,* 113 Cal.App.2d 746, 750 [249 P.2d 63]).

▮ The remaining assignment of error, the inadmissibility of Exhibits 8 and 9, two checks not referred to in the information, is not extensively pursued—nor could it be. First, it is not suggested that the admission of such evidence prejudiced defendant's rights; second, defendant's intent was in issue with respect to the forgery counts and the question of payment was in issue with regard to the charge of grand theft. On both checks (Exhibits 8 and 9) the signature of Dr. Grant was written in different color ink from that used to write the signature "Florence McAffery," and the same is true of the three checks mentioned in the information; clearly the evidence objected to was admissible to establish the intent with which Dr. Grant's signature was written on the three checks forming the forgery counts, as well as to show a general scheme to embezzle Dr. Grant's money. ▮ "For the purpose of establishing fraudulent intent in a prosecution for grand theft in the nature of embezzlement evidence is admissible of acts of a similar nature committed by defendant before and after the date of the act upon which the conviction is predicated." (*People* v. *Kendall,* 65 Cal.App.2d 569, 570 [151 P.2d 39].)

▮ Finally, even if there were merit to appellant's

contentions, it is not reasonably probable that a more favorable result would have been reached in the absence of the error asserted. The evidence, exclusive of the exhibits, admissibility of which is challenged, sufficiently supports the judgment on all four counts. The crime of forgery (Counts I, II and III) is committed when one makes or passes a false instrument with intent to defraud, the element of loss or detriment being immaterial (*People* v. *Morgan,* 140 Cal. App.2d 796, 800 [296 P.2d 75]); the checks and money order involved were on their face capable of defrauding someone, and the trial court was justified in disbelieving appellant's somewhat implausible narrative of her business dealings with her employer. As to Count IV, appellant never turned over to Dr. Grant the money received (totaling $475) in exchange for the three instruments and hence committed the crime of grand theft, a separate and distinct offense under the circumstances at bar (*People* v. *Stein,* 157 Cal.App.2d 259, 264 [320 P.2d 519]).

The judgment (order granting probation) and the order denying the motion for a new trial are affirmed.

Wood, P. J., and Fourt, J., concurred.