[Crim. No. 8635.   Second Dist., Div. Three.   Oct. 11, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. EDDIE MALDONADO, Defendant and Appellant.

130

David C. Marcus for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and H. Warren Siegel, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Following trial by jury, Edward Maldonado was found guilty of count II of the information, issuing a check without sufficient funds, and count III, forgery of endorsement, in violation of Penal Code, sections 476a and 470, respectively. Defendant admitted the allegation of the information that he had suffered a prior conviction of grand theft and did not take the stand. He was found not guilty of a charge of grand theft, count I. A motion for new trial and probation having been denied, defendant was sentenced to the state prison. He appeals from the order denying his motion and from the judgment. Dismissing the appeal from the order (Pen. Code, § 1237), we consider the appeal from the judgment.

Defendant, directing his argument to the element of fraudulent intent, contends that there was insufficient evi-

dence to support either conviction. With respect to the charge of issuing a check without sufficient funds, we cannot agree. The record discloses that on March 9, 1961, defendant, who was in the business of buying and selling automobiles and employed by Enoch Chevrolet Company, gave to Mr. and Mrs. Rangel a check for $2,250 drawn upon the account of "Michael's Auto Leasing," which defendant owned, at the Community Bank in Huntington Park. In return the Rangels delivered to defendant their 1960 Chevrolet automobile and its endorsed certificate of ownership. It was uncontradicted that the account upon which the check was drawn had been closed some five months prior to the date of the issuance of the check. On March 10, 1961, Maldonado sold the car to Enoch Chevrolet Company for $2,000. There was evidence that the Rangels were negotiating with Enoch Chevrolet, previous to and after the sale of their car, for a 1961 Chevrolet and at a later date, at the suggestion of the company, for a 1962 Chevrolet. A 1961 demonstrator model was loaned to the Rangels by defendant and was used by them for about seven months. The Rangels held the check for 10 months before attempting to cash it, for the reason that they intended to use it as credit toward the purchase of a new car from defendant. Because of the breakdown of negotiations for a new car and their rejection of second-hand cars that were offered them the Rangels became dissatisfied and went to the police in December of 1961. When they attempted to cash the check it was dishonored. The Rangels have received nothing for their car except the temporary use of another one.

Defendant contends that there was no intent to defraud since the check was merely an evidence of credit and was not to be negotiated. The argument is unavailing. Although there was evidence that defendant told the Rangels the check could be used as credit upon the purchase of another car there was no evidence they were told not to present the check for payment or that they promised not to present it or understood it was not cashable. The check, itself, was a representation that the amount of it would be paid upon presentation. Defendant not only deceived the Rangels but he gained over them an unfair advantage. The check was of no value unless used as a credit upon the purchase of another car. After extensive negotiations defendant represented to the Rangels that he would deliver them the 1962 Chevrolet for $700 in addition to a credit in the amount of the check and on October 22, 1961, Mr. Rangel gave him authorization to purchase such a car.

The order stated the total price to be $3,066, the credit for the check $2,300 and the balance to be $788. Opposite "accessories" there was a blank line. However, under "equipment" were listed seven articles having a combined cost price of $485.75. No prices were stated and Rangel was not told that the cost of the car would exceed $3,066. But by December even the 1962 car was not made available for purchase; the Rangels gave up hope and went to the police.

Although these related facts were sufficient to justify a belief that defendant had a fraudulent purpose in issuing the check there was other evidence which tended to prove that he had no intention of dealing fairly with the Rangels.

For the purpose of proving defendant's fraudulent intent in the transactions which were the subject of all three counts the People used evidence of a transaction in which defendant obtained a car from William H. Spriggs. Called as a witness for the People Spriggs testified he had given Enoch Chevrolet an order for a new car and a check on account for $100. Maldonado, representing himself to be Enoch's sales manager, informed him the car could not be delivered for the price stated but offered to furnish the car for the same price through defendant's "Michael's Auto Leasing." Spriggs signed another order and gave Maldonado a check for $100 on account, upon the promise that the deposit with Enoch Chevrolet would be returned. At the same time Spriggs transferred title to his own car as a trade-in. Maldonado subsequently sold the trade-in to another car dealer, taking in return a check drawn to the order of "Michael's Auto Leasing," a closed account. The new car was never delivered and defendant caused Enoch Chevrolet to draw a check for $100 payable to Spriggs. Maldonado cashed the check, signing Mr. Spriggs' name without authority, and retained the $100. Upon learning of this, Spriggs contacted the defendant, who thereupon gave him his personal check for $1,000. It was dishonored for insufficient funds. Evidence of the foregoing was received over defendant's objection. It is contended that the ruling was in error. It was developed that defendant was under prosecution for forgery and grand theft in the Spriggs transaction and that the preliminary examination upon the charge had not been held, and it is strongly argued not only that the evidence was not admissible for any purpose, but that it unfairly placed defendant in the position of having to permit the accusatory testimony of Spriggs to go unanswered by defendant or dis-

close by his testimony facts that might be used against him in the other prosecution.

■ If the evidence of other offenses meets the test of admissibility the fact that the circumstances formed the basis of separate charges then pending against the defendant, identical to those at bar, that they occurred subsequent in time to the offense at bar, or that they may tend to prejudice the defendant in the minds of the jurors, is immaterial to their admissibility, regardless of the outcome of the collateral charges. (See *People* v. *Lewis*, 105 Cal.App.2d 208, 214 [233 P.2d 30]; *People* v. *Frank*, 28 Cal. 507, 516; *People* v. *Alexander*, 123 Cal.App.2d 918, 923 [267 P.2d 883]; 18 Cal. Jur.2d, Evidence, § 137.)

■ Both defendant and the People cite the opinion in the leading case of *People* v. *Channell*, 136 Cal.App.2d 99 [288 P.2d 326], prepared by Mr. Justice Vallée, as a comprehensive exposition of the law which governs in the use of evidence of other crimes. It was said (p. 113) : "To be admissible the evidence of other offenses must tend to show that the offense for which defendant is being tried is part of a general plan or system of criminal acts; they must be part of a chain and in consequence so linked as to be necessarily connected with the system or general plan." ■ The evidence of the Spriggs transaction met this test with respect to counts I and II. In each transaction Maldonado obtained title to a car by promising to pay an agreed price by giving credit in the amount upon the purchase price of another car which he agreed to deliver; he immediately sold the victims' car and kept the money. He failed to produce the car the victims intended to purchase, and there was no evidence that he made any effort to keep his promises. In the Rangel transaction he issued a worthless check to assure the Rangels that they would get the price of their car in one way or another, and to Spriggs he merely made a promise; but in each case the promise was one he evidently did not intend to keep. Essentially the purpose and the methods were identical. It is immaterial that the arguments used to gain the confidence of the victims were not in all respects the same. The questioned evidence was admissible under counts I and II. It is immaterial whether it was also admissible under count III next to be considered.

■ When defendant bought the Rangels' car he had title placed in the name of Sydney Brotman, doing business as "Syd Brotman, Used Cars." Representing to Enoch

Chevrolet that the car belonged to Brotman defendant caused a check to be issued to Brotman for $2,000 and a check to himself for $25 for finding the deal. Without authority from Brotman defendant endorsed the $2,000 check "Syd Brotman, Used Cars," by himself, and received for it a cashier's check for $1,300 payable to Brotman and $700 in cash. He gave the cahier's check to Brotman. He owed Brotman some $200. He caused Brotman to pay to a customer about $650 which defendant owed and from time to time received from Brotman sums amounting to several hundred dollars. Defendant used Brotman's name in the transaction with the Rangels without his knowledge or consent.

■ The crime of forgery of endorsement is complete when one passes a false instrument with intent to defraud. ■ In determining this intent, the test is whether upon its face the false instrument will have the effect of defrauding one who acts upon it as genuine. (*People* v. *McAffery*, 182 Cal.App.2d 486, 493 [6 Cal.Rptr. 333]; *People* v. *Morgan*, 140 Cal.App.2d 796, 801 [296 P.2d 75]; *People* v. *McKenna*, 11 Cal.2d 327, 332 [79 P.2d 1065].)

■ The evidence does not support the conviction, under count III, of forging Brotman's name to the $2,000 check. Although Brotman did not authorize the endorsement or cashing of the check he was not defrauded. If defendant had not used Brotman as a dummy to obtain an additional $25 from Enoch Chevrolet he could have had the check made payable to himself. The Rangels were not entitled to receive the money and they were not defrauded by defendant's endorsement of the check. And since an intent to defraud is an element of the crime of forgery under section 470 of the Penal Code (*People* v. *Valdes*, 155 Cal.App.2d 613 [318 P.2d 118]), the conviction under count III must be reversed for insufficiency of the evidence.

■ Error is assigned in the denial of defendant's motion for a new trial upon the ground of newly discovered evidence. In his affidavit filed in support of the motion, defendant quoted from the testimony of Spriggs in the preliminary examination in the other pending prosecution to the effect that it was understood that the $100 deposit with Enoch Chevrolet would be applied upon the purchase of a car from defendant. It is argued that the later testimony of Spriggs tended to impeach his testimony in the trial that the deposit was to be returned to him. The claimed impeachment was unsubstantial. It did not bear upon the purpose of defendant

in taking money from Spriggs. The law is settled that evidence which only tends to impeach the testimony of a witness is not such newly discovered evidence as will require the granting of a motion for a new trial. (*People* v. *Valencia,* 30 Cal.App.2d 126, 129 [86 P.2d 122].)

■ Defendant assigns error in the sustaining of objections to questions whether Mrs. Rangel had not made statements that they intended to use defendants check for credit upon the purchase of a car. The rulings were not prejudicial. There was ample evidence to the same effect.

The judgment is reversed as to count III and affirmed as to count II.

Ford, J., and Files, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 7, 1964. Peters, J., was of the opinion that the petition should be granted.