.[Crim. No. 9031.   Second Dist., Div. Three.   Aug. 19, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. KENNETH SAMORE BRAVER, Defendant and Appellant.

David Daar for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Peter Graber, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—The defendant was found guilty by a jury of the crimes of forgery (Pen. Code, § 470) and grand theft (Pen. Code, § 487, subd. 1) in a second trial, a jury having been unable to reach a verdict as to either charge in the first trial. He has appealed from the ensuing judgment and from the order denying his motion for a new trial.

The case of the prosecution was that the defendant had signed the names of his uncle and aunt to a promissory note and chattel mortgage and had represented to George Kleck, the manager of the Los Angeles office of a finance company, that the signatures were genuine and that the loan was being requested by his uncle and aunt, the defendant thereby obtaining a check for $497.20 payable to his uncle which he cashed for his own use. The monthly payment to be made under the terms of the loan was $26.51.

The testimony given on behalf of the People as to the transaction at the office of the finance company was that of Mr. Kleck. At the time of the trial, Mr. Kleck was serving a term of imprisonment in the state prison because of the commission of the crimes of forgery and grand theft while an employee of the finance company. The offenses to which he had pleaded guilty were unrelated to those charged against the defendant.

The defendant testified that he had obtained an automobile loan from Mr. Kleck early in December 1960. Later that

month he talked to Mr. Kleck about obtaining another loan. Mr. Kleck said that his company would not carry two loans for the same person but, if the defendant could secure permission from a friend or relative having satisfactory credit, a loan could be made in the name of such person. The defendant then called his aunt who told him he could make the loan in her name and that of his uncle if the defendant would make the payments on the obligation. Thereafter the defendant returned to Mr. Kleck's office and Mr. Kleck showed him where to sign the names of his uncle and aunt on the promissory note and chattel mortgage. The defendant signed the documents in Mr. Kleck's presence and Mr. Kleck signed his name as a witness. Mr. Kleck told him not to use the same form of handwriting for each name written by him as a borrower's signature. The defendant further testified that he believed that it was proper to sign the documents as he did because Mr. Kleck told him to do so and because he had his aunt's permission. He used the proceeds of the check for his own purposes because the loan was for him.

The defendant's aunt was called as a witness in his behalf. She testified that "right after the Christmas holidays" in 1960 the defendant telephoned her and asked her if she would give him permission to use her name and that of her husband to obtain a loan "at this company." She told him that he could do so. Later, when he called again, she gave him a list of credit references.

The defendant does not contend that there was insufficient evidence to sustain his conviction. But he does assert that there was prejudicial error on the part of the court with respect to its rulings as to the admissibility of evidence offered by him.

Under cross-examination by counsel for the defendant, the general manager of the finance company testified that a total of eight payments had been received on the promissory note. During the direct examination of the defendant, he testified that he made 11 or 12 payments. Thereafter, when the defendant's attorney undertook to offer documentary evidence of payments, in the presence of the jury the court directed counsel to explain the relevancy with respect to the issue of guilt or innocence of testimony as to payments made by the defendant. Counsel replied that such evidence was relevant on the question of the existence of an intent to defraud. The trial judge stated: "I can't see it . . . I cannot permit

you to continue going into these matters which have to do with the subsequent events, the payments that were made on the note.'' Subsequently, out of the presence of the jury, the defendant's attorney said that he offered to prove that the defendant ''with some tardiness made each and every payment up until the time this case blew up,'' and stated that he had documentary evidence available which consisted in part of original money orders, subpoenas having been served on the issuers thereof. He further said that the documentary evidence would show total payments of $264.56 made before the filing of the information in the case, except that he had not obtained competent evidence with respect to two or three postal money orders. The trial judge stated that he ''was not going to determine the offer of proof, because . . . restoration or reimbursement is not a defense.'' A motion for a mistrial, based on the court's comment in front of the jury, was denied.[1]

█ It is, of course, true that when money is obtained by the use of false pretenses, subsequent restitution or repayment is not a defense. (*People* v. *Wynn,* 44 Cal.App.2d 723, 729 [112 P.2d 979]; Witkin on Cal. Crimes, § 418, p. 389.) In the present case, however, the evidence of payments made was not offered to show restitution but, rather, was offered in support of the defendant's claim that no crime had been committed because he had entered into the transaction in good faith and without an intent to defraud anyone. █ In *People* v. *Marsh,* 58 Cal.2d 732, at page 736 [26 Cal.Rptr. 300, 376 P.2d 300], the Supreme Court stated: ''Under section 484 of the Penal Code an essential element of that offense [obtaining money by false representations] is that defendant had the specific intent to defraud. . . . █ It follows, as a matter of course, that a defendant is entitled, in such a case, to introduce proper evidence that tends to establish that he did not, in fact, possess the intent required by the code section. Such evidence may be introduced either to controvert the evidence produced by the prosecution, or to establish affirmatively the lack of the required criminal intent. It is elementary that if the prosecution can introduce evidence of a

---

[1]In passing upon an objection to a question addressed to another witness at a later point in the trial, in the presence of the jury the court stated: ''I think that's included within your other offer. I have told you that payment of money embezzled or stolen, if it was so, is not a defense, and I am going to so instruct the jury, and that's what you are asking this man.''

required specific intent, the defendant must be given the equal privilege of showing the lack of such intent [citation].''

█ An element of the crime of forgery is, of course, an intent to defraud. (*People* v. *Valdes*, 155 Cal.App.2d 613, 615 [318 P.2d 118]; *People* v. *Crowder*, 126 Cal.App.2d 578, 585 [272 P.2d 775].) This court said in the *Valdes* case (155 Cal.App.2d, at p. 615): ''There can be no forgery unless the evidence justifies reasonable conclusions that the signer had knowledge of his lack of authority and intended to commit a fraud.'' █ In a case wherein one of the charges was forgery, *People* v. *Geibel*, 93 Cal.App.2d 147, Justice White stated at page 175 [208 P.2d 743]: ''It follows as a matter of course that appellant was entitled to rebut or controvert any of the evidence that tended to establish such alleged intent. It would be a poor exemplification of the administration of even-handed justice to allow the prosecution by the introduction of evidence to prove specific intent on the part of an accused in the alleged commission by him of a criminal offense, and in the same action to deny the accused an equal privilege to rebut or controvert such evidence by showing his lack of criminal intent [citation].''

█ The subsequent conduct of the defendant with respect to the obligation was of some evidentiary value as to whether he had an intent to defraud at the time the loan was sought and obtained. (See *People* v. *Hand*, 127 Cal.App. 484, 487 [16 P.2d 156]; *People* v. *Hambleton*, 218 Cal.App.2d 479, 482 [32 Cal.Rptr. 471]; 35 C.J.S., False Pretenses, § 51, at p. 902.) In *State* v. *Scott*, 105 Utah 31 [140 P.2d 929], on the day after a check had been cashed the maker of the check informed the husband of the person who had cashed the check that there were insufficient funds in the bank, and the maker gave the husband cash in the amount of the check. With respect to the admissibility of evidence of such payment on the issue of intent to defraud, the Supreme Court of Utah made reference to a particular instruction and stated (140 P.2d, at p. 932): ''By such instruction the court told the jury that payment of the amount of the check could not be considered as a defense. Technically such instruction was correct, but as given it was susceptible of being misunderstood by the jury. The jury might very well not have understood the difference between a 'defense' and proof which tends to show no offense was committed, and without further explanation they might have assumed that they could not consider the fact of payment

or reimbursement for any purpose. If at the time the check was issued the defendants had the necessary intention to defraud, knowing there were not sufficient funds ·in the bank or credit with the bank for payment when presented, the subsequent payment of the amount thereof would not be a defense to prosecution; but the fact that the check was paid within a day after delivery might tend to prove that they had no knowledge that the funds were insufficient for payment and that there was no intention to defraud entertained by them at the time of issuance or negotiation of the instrument. The giving of such instruction without further explanation, therefore was error.''

The jury could not fail to conclude from the judge's comments that the fact of subsequent payments had no evidentiary value whatsoever in the process of resolving the question of whether the defendant had an intent to defraud. It is not reasonable to assume that the erroneous impression was dissolved by the general instruction that the jurors were not to be concerned with the reasons for the rulings of the court with respect to the admission of evidence. Moreover, the prejudice engendered by the comments of the court gathered strength from the unqualified instruction, given at the request of the People, that ''It is not a defense to a prosecution for theft that after the theft was committed, complete or partial restitution was made to the owner of the stolen property, or that his loss was wholly or partly recouped by any other means.''

■ Another claim of error remains for consideration. During the cross-examination of Mr. Kleck, the defendant's counsel sought to inquire as to whether, prior to the transaction which formed the basis of the charges against the defendant, Mr. Kleck obtained $850 from his employer by means of a fictitious loan transaction in which the defendant was designated as the borrower, all without the defendant's knowledge. The theory of admissibility was that Mr. Kleck caused the defendant to make the subsequent loan in the names of his uncle and aunt and to sign their names to the documents for the purpose of attempting to prevent the defendant from revealing the true nature of the $850 transaction when he should become aware of it. The trial court ruled that the inquiry would not be permitted at that stage of the trial. Thereafter Mr. Kleck was called as a witness for the defendant and the court again ruled that questions as to that matter would not be permitted. At that point counsel in-

dicated that he expected to show that, as to the $850 transaction, by the use of deception Mr. Kleck obtained the defendant's signature upon an uncompleted document. The same ruling was made during the course of the direct examination of the defendant by his counsel, the court expressing the opinion that the offered evidence was inadmissible as an attempt to impeach the witness Kleck by showing a particular wrongful act on his part. (See Code Civ. Proc., § 2051.)

The defendant's purpose was to show that Mr. Kleck had a motive of inducing the defendant to have the new loan transaction in the names of his uncle and aunt and to sign their names to the documents and that, accordingly, the defendant's version of the transaction was more credible than that of Mr. Kleck. Such evidence was admissible and it was error to exclude it. (See Wigmore on Evidence (3d ed.) §§ 117-119, 385-391.)

It is to be noted that the case of the People rested to a substantial extent upon the testimony of Mr. Kleck, who was in the state prison because of acts of dishonesty directed against his employer, the finance company. The jury had the task of determining his credibility as against that of the defendant. After a consideration of the whole record, it must be said that there was a miscarriage of justice because it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the errors noted. (See *People* v. *Watson,* 46 Cal.2d 818, 834-837 [299 P.2d 243].) Accordingly, the duty of this court is to reverse the judgment. (*People* v. *Muza,* 178 Cal.App.2d 901, 914 [3 Cal.Rptr. 395].)

The order denying the defendant's motion for a new trial is not separately appealable (Pen. Code, § 1237) and the appeal therefrom is dismissed. The judgment is reversed and the cause is remanded for a new trial.

Shinn, P. J., and Files, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 15, 1964. Mosk, J., did not participate therein.