[Crim. No. 1367. Fifth Dist. May 9, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD L. WING, Defendant and Appellant.

## COUNSEL

Robert W. M. Cross, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Charles P. Just and Willard F. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

FRANSON, J.—Appellant appeals from a judgment of conviction of forgery (Pen. Code, § 470) following trial by jury.

About January 24, 1972, appellant bought groceries costing $21.32 at a Purity Food Store in Merced. He paid for the groceries with a check dated January 21, 1972 in the amount of $100, and received the balance in cash. The check was drawn upon the account of the Seventh Step Foundation at the United California Bank in Merced, and was payable to appellant. He endorsed the check in the clerk's presence and gave his driver's license for identification.

The check bore a drawer's signature of "Thomas Smith." Mr. Smith was one of four persons authorized to sign checks on behalf of the foundation, but he did not sign the check in question. The foundation's account required two signatures to draw a check on the account. Appellant was not authorized to sign checks for the foundation.

The foundation held its last meeting in November 1971 and apparently ceased to function thereafter. Smith had been vice president of the foundation and had custody of the foundation's checkbook. He kept the checkbook in an unlocked drawer of his desk in an office located next door to the foundation office.

Appellant had been employed by the foundation; however Smith testified that appellant performed no services for the foundation after November 1971 and at no time in 1972 did the foundation owe appellant $100.

Over a defense objection on grounds of relevancy, Smith was allowed to testify regarding events that occurred on January 18, 1972. On that date he found that a page of unnumbered checks had been torn out of the foundation's checkbook and left on top of his desk. The checkbook was in its proper place in his desk drawer. He observed that the transom above his door had been forced open and dust had been moved as though someone had come through the transom. There were no indications that anything actually had been removed from the office. Smith contacted the bank on January 18 because he suspected some checks were missing.

In response to the notice from Smith, the operations officer of the bank put the foundation account "on referral" so that all checks drawn on the account would be referred to him before payment. The bank officer returned the forged check because it had only one signature on behalf of the foundation.

Prior to trial appellant made an offer of proof consisting of the testimony of the manager of the Purity store that between January 21 and February 1 "he received a telephone call from the defendant promising restitution within a day or few days thereafter; and that on the 1st of February he did in fact receive restitution in the amount of the check

. . . ." The trial court ruled this evidence inadmissible on the ground that it was irrelevant.

Appellant did not testify at the trial.

Appellant contends that his proffered evidence of restitution should have been admitted as showing a lack of intent on his part to defraud either the Purity store, the bank, or the foundation. In support of his contention he cites a series of cases involving prosecutions under Penal Code section 476a, drawing a check on a bank with insufficient funds.

■ In a Penal Code section 476a prosecution, evidence of a reasonable expectation of payment is relevant to the question of the defendant's intent to defraud. (*People* v. *Griffith,* 120 Cal.App.2d 873, 880-881 [262 P.2d 355]. See *People* v. *Becker,* 137 Cal.App. 349 [30 P.2d 562]; *People* v. *Gaines,* 106 Cal.App.2d 176 [234 P.2d 702].)

In *People* v. *Griffith, supra,* it is held that where a defendant negotiates a check with knowledge that he does not have sufficient funds in the bank but he has good reason to believe it will be paid in due course when presented to the bank, he does not have an intent to defraud.[1] (*People* v. *Rubin,* 223 Cal.App.2d 825, 834 [36 Cal.Rptr. 167, 9 A.L.R.3d 707]; *People* v. *Becker, supra.*)

In a prosecution for forgery in violation of Penal Code section 470, where a defendant knowingly passes a false check on another's account, the general rule is that subsequent restitution or repayment is irrelevant to the question of the specific intent to defraud at the time of passing the check. (*People* v. *Parker,* 11 Cal.App.3d 500, 510 [89 Cal.Rptr. 815].) ■ The crime is completed when the defendant passes the forged check; he has misrepresented the genuineness of the instrument for the purpose of obtaining cash or property. The intent to defraud is inferred from the very act of passing the check. (See *People* v. *Weitz,* 42 Cal.2d 338, 350 [267 P.2d 295]; *People* v. *Maldonado,* 221 Cal.App.2d 128, 134 [34 Cal.Rptr. 168].) Intrinsically, the act is inconsistent with any intent other than to defraud.

Appellant relies on *People* v. *Braver,* 229 Cal.App.2d 303 [40 Cal.Rptr.

[1] In *People* v. *Poyet,* 6 Cal.3d 530, 536 [99 Cal.Rptr. 758, 492 P.2d 1150], the language in *Griffith* was disapproved insofar as it suggests that in negotiating a check on his own account the maker does not represent that he then has sufficient funds or credit in the bank to cover the check. However, despite such representation, if the maker in good faith believes the check will be paid when presented he has no intent to defraud. The *Griffith* holding appears sound. (See dissent in *Poyet,* at p. 539; 1 Witkin, Cal. Crimes (1963) § 486.)

142, 10 A.L.R.3d 565]; and *People v. Katzman,* 258 Cal.App.2d 777 [66 Cal.Rptr. 319], for the proposition that evidence of restitution is admissible on the issue of intent to defraud in a section 470 forgery case as well as in a section 476a insufficient funds case. An analysis of these cases, however, demonstrates that the evidence of repayment, while incidentally relevant to the issue of the defendant's intent to defraud at the time of passing the instrument, was directly relevant to whether the instrument was in fact false and whether defendant had knowledge thereof.

In *Braver* the defendant was convicted of forgery of a promissory note. He testified that he sought to obtain a loan from one Kleck, an officer of a finance company, and was told by Kleck that he could not obtain the loan unless it was arranged in the name of a friend or relative having satisfactory credit. The defendant's aunt testified that he obtained her permission to take a loan in the names of her husband and herself on the condition that he would make the payments. In Kleck's presence and at his direction the defendant signed the names of his aunt and uncle to the note. The defendant testified that he made 11 or 12 payments on the note but the trial court refused to admit documentary evidence of the payments. The reviewing court first noted that restitution is not a defense to theft by false pretenses, but then stated:

"In the present case, however, the evidence of payments made was not offered to show restitution but, rather, was offered in support of the defendant's claim that no crime had been committed because he had entered into the transaction in good faith and without an intent to defraud anyone." (P. 306.)

The evidence of payment supported the defendant's testimony that he had obtained his aunt and uncle's authority to sign their names upon his promise to make the note payments.

In *Katzman* the defendant was convicted of forgery for obtaining numerous bank loans upon the collateral of stock certificates of a defunct Nevada corporation upon which were forged the names of two officers of a Delaware corporation of the same name. The defendant represented to the lenders that the stock was listed on the American Exchange when in truth the stock listed on the exchange was that of the Delaware corporation. The defendant did not deny using the forged stock to obtain the loans, but testified that his codefendant had loaned him the stock and he believed the certificates. represented shares in the Delaware corporation. He contended that the trial court committed error in not instructing *sua sponte* that his repayment to some of the banks involved was evidence of

a lack of intent to defraud. The reviewing court, citing *Braver,* stated, at page 791:

". . . [defendant] was entitled to and did present evidence of his attempts at repayment of the various loans in an endeavor to convince the jury that he did not know the certificates were false . . . ."

The evidence of repayment supported the defendant's testimony that he did not know the stock certificates were false; without such knowledge there could be no forgery.

■ We hold that in a prosecution for violation of Penal Code section 470, in the absence of evidence that the defendant had authority to affix either *his name or some other person's name to the instrument, or that he* did not know the instrument was false at the time he passed it, the bare fact of restitution or repayment is irrelevant as having no tendency in reason to prove or disprove any fact that is of consequence in the action.[2] (See *People* v. *Parker, supra,* 11 Cal.App.3d at p. 510; Perkins on Criminal Law (2d ed. 1964) § 8, pp. 353-354.)

Appellant next contends that the trial court committed prejudicial error in admitting evidence of a possible break-in of Smith's office on January 18. The only objection to this evidence was on the ground of its relevancy. Arguably, any relevancy[3] was perhaps outweighed by the prejudicial effect of the evidence and it would have been excluded had appellant made a motion under Evidence Code section 352.

However, a judgment cannot be reversed by reason of the erroneous admission of evidence unless the record indicates a timely objection or motion to exclude "so stated as to make clear the specific grounds of the objection . . . ." (Evid. Code, § 353.)

■ Even assuming that appellant's objection was sufficient to preserve the point on appeal, the error is prejudicial only if the reviewing court is of the opinion that the admission of the evidence resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13; Evid. Code, § 353.) We have re-

---

[2]While it may be argued that restitution raises an inference that the defendant did not know the instrument was a forgery, or that he in good faith believed he had authority to affix his name thereto, we believe such an inference is too tenuous to be accorded judicial recognition absent other evidence supporting the inference. Evidence is relevant only if it has a tendency *in reason* to prove or disprove the disputed fact. (Evid. Code, § 210.)

[3]It perhaps raises an inference as to the means by which appellant obtained possession of the foundation's check and his lack of authority to endorse the check.

viewed the entire record and it does not reasonably appear probable that the jury would have reached a different result had the evidence not been admitted. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

The judgment is affirmed.

Brown (G. A.), P. J., and Gargano, J., concurred.

A petition for a rehearing was denied June 1, 1973, and appellant's petition for a hearing by the Supreme Court was denied July 6, 1973.